# EXHIBIT 1

14 Stat., 799. Ratified July 27, 1866. Proclaimed Aug. 11, 1866.

Articles of agreement and convention at the city of Washington on the nineteenth day of July, in the year of our Lord one thousand eight hundred and sixty-six, between the United States, represented by Dennis N. Cooley, Commissioner of Indian Affairs, (and) Elijah Sells, superintendent of Indian affairs for the southern superintendency, and the Cherokee Nation of Indians, represented by its delegates, James McDaniel, Smith Christie, White Catcher, S. H. Benge, J.B. Jones, and Daniel H. Ross, John Ross, principal chief of the Cherokees, being too unwell to join in these negotiations. Whereas existing treaties between the United States and the Cherokee Nation are deemed to be insufficient, the said contracting parties agree as follows, viz:

ARTICLE 1. The pretended treaty made with the so-called Confederate States by the Cherokee Nation on the seventh day of October, eighteen hundred and sixty-one, and repudiated by the national council of the Cherokee Nation on the eighteenth day of February, eighteen hundred and sixty-three, is hereby declared to be void.

ARTICLE 2. Amnesty is hereby declared by the United States and the Cherokee Nation for all crimes and misdemeanors committed by one Cherokee on the person or property of another Cherokee, or of a citizen of the United States, prior to the fourth day of July, eighteen hundred and sixty-six; and no right of action arising out of wrongs committed in aid or in the suppression of the rebellion shall be prosecuted or maintained in the courts of the United States or in the courts of the Cherokee Nation. [943] But the Cherokee Nation stipulate and agree to deliver up to the United States, or their duly authorized agent, any or all public property, particularly ordnance, ordnance stores, arms of all kinds, and quartermaster's stores, in their possession or control, which belonged to the United States or the so-called Confederate States, without any reservation.

ARTICLE 3. The confiscation laws of the Cherokee Nation shall be repealed, and the same, and all sales of farms, and improvements on real estate, made or pretended to be made in pursuance thereof, are hereby agreed and declared to be null and void, and the former owners of such property so sold, their heirs or assigns, shall have the right peaceably to re-occupy their homes, and the purchaser under the confiscation laws, or his heirs or assigns, shall be repaid by the treasurer of the Cherokee Nation from the national funds, the money paid for said property and the cost of permanent improvements on such real estate, made thereon since the confiscation sale; the cost of such improvements to be fixed by a commission, to be composed of one person designated by the Secretary of the Interior and one by the principal chief of the nation, which two may appoint a third in cases of disagreement, which cost so fixed shall be refunded to the national treasurer by the returning Cherokees within three years from the ratification hereof.

ARTICLE 4. All the Cherokees and freed persons who were formerly slaves to any Cherokee, and all free negroes not having been such slaves, who resided in the Cherokee Nation prior to June first, eighteen hundred and sixty-one, who may within two years elect not to reside northeast of the Arkansas River and southeast of Grand River, shall have the right to settle in and occupy the Canadian district southwest of the

Arkansas River, and also all that tract of country lying northwest of Grand River, and bounded on the southeast by Grand River and west by the Creek reservation to the northeast corner thereof; from thence west on the north line of the Creek reservation to the ninety-sixth degree of west longitude; and thence north on said line of longitude so far that a line due east to Grand River will include a quality of land equal to one hundred and sixty acres for each person who may so elect to reside in the territory above-described in this article: Provided, That that part of said district north of the Arkansas River shall not be set apart until it shall be found that the Canadian district is not sufficiently large to allow one hundred and sixty acres to each person desiring to obtain settlement under the provisions of this article.

ARTICLE 5. The inhabitants electing to reside in the district described in the preceding article shall have the right to elect all their local officers and judges, and the number of delegates to which by their numbers they may be entitled in any general council to be established in the Indian Territory under the provisions of this treaty, as stated in Article 12, and to control all their local affairs, and to establish all necessary police regulations and rules for the administration of justice in said district, not inconsistent with the constitution of the Cherokee Nation or the laws of the United States; Provided, The Cherokees residing in said district shall enjoy all the rights and privileges of other Cherokees who may elect to settle in said district as hereinbefore provided, and shall hold the same rights and privileges and be subject to the same liabilities as those who elect to settle in said district under the provisions of this treaty; Provided also, That if any such police regulations or rules be adopted which, in the opinion of the President, bear oppressively on any citizen of the nation, he may suspend the same. And all rules or regulations in said district, or in any other district of the nation, discriminating against the citizens of other districts, are prohibited, and shall be void.

ARTICLE 6. The inhabitants of the said district hereinbefore described shall be entitled to representation according to numbers in the national council, and all laws of the Cherokee Nation shall be uniform throughout said nation. And should any such law, either in its provisions or in the manner of its enforcement, in the opinion of the President of the United States, operate unjustly or injuriously in said district, he is hereby authorized and empowered to correct such evil, and to adopt the means necessary to secure the impartial administration of justice, as well as a fair and equitable application and expenditure of the national funds as between the people of this and of every other district in said nation.

ARTICLE 7. The United States court to be created in the Indian Territory; and until such court is created therein, the United States district court, the nearest to the Cherokee Nation, shall have exclusive original jurisdiction of all causes, civil and criminal, wherein an inhabitant of the district hereinbefore described shall be a party, and where an inhabitant outside of said district, in the Cherokee Nation, shall be the other party, as plaintiff or defendant in a civil cause, or shall be defendant or prosecutor in a criminal case, and all process issued in said district by any officer of the Cherokee Nation, to be executed on an inhabitant residing outside of said district, and all process issued by any officer of the Cherokee Nation outside of said district, to be executed on an inhabitant residing in said district, shall be to all intents and purposes null and void, unless endorsed by the district judge for the district where such process is to be served, and said person, so arrested, shall be held in custody by the officer so arresting him, until he shall be delivered over to the United States marshal, or consent to be tried

by the Cherokee court: Provided, That any or all the provisions of this treaty, which make any distinction in rights and remedies between the citizens of any district and the citizens of the rest of the nation, shall be abrogated whenever the President shall have ascertained, by an election duly ordered by him, that a majority of the voters of such district desire them to be abrogated, and he shall have declared such abrogation: And provided further, That no law or regulation, to be hereafter enacted within said Cherokee Nation or any district thereof, prescribing a penalty for its violation, shall take effect or be enforced until after ninety days from the date of its promulgation, either by publication in one or more newspapers of general circulation in said Cherokee Nation, or by posting up copies thereof in the Cherokee and English languages in each district where the same is to take effect, at the usual place of holding district courts.

ARTICLE 8. No license to trade in goods, wares, or merchandise shall be granted by the United States to trade in the Cherokee Nation, unless approved by the Cherokee national council, except in the Canadian district, and such other district north of Arkansas River and west of Grand River occupied by the so-called southern Cherokees, as provided in Article 4 of this treaty.

ARTICLE 9. The Cherokee Nation having, voluntarily, in February, eighteen hundred and sixty-three, by an act of the national council, forever abolished slavery, hereby covenant and agree that never hereafter shall either slavery or involuntary servitude exist in their nation otherwise than in the punishment of crime, whereof the party shall have been duly convicted, in accordance with laws applicable to all the members of said tribe alike. They further agree that all freedmen who have been liberated by voluntary act of their former owners or by law, as well as all free colored persons who were in the country at the commencement of the rebellion, and are now residents therein, or who may return within six months, and their descendants, shall have all the rights of native Cherokees: Provided, That owners of slaves so emancipated in the Cherokee Nation shall never receive any compensation or pay for the slaves so emancipated.

ARTICLE 10. Every Cherokee and freed person resident in the Cherokee Nation shall have the right to sell any products of his farm, including his or her live stock, or any merchandise or manufactured products, and to ship and drive the same to market without restraint, paying any tax thereon which is now or may be levied by the United States on the quantity sold outside of the Indian Territory.

ARTICLE 11. The Cherokee Nation hereby grant a right of way not exceeding two hundred feet wide, except at stations, switches, water-stations, or crossing of rivers, where more may be indispensable to the full enjoyment of the franchise herein granted, and then only two hundred additional feet shall be taken, and only for such length as may be absolutely necessary, through all their lands, to any company or corporation which shall be duly authorized by Congress to construct a railroad from any point north to any point south, and from any point east to any point west of, and which may pass through, the Cherokee Nation. Said company or corporation, and their employees and laborers, while constructing and repairing the same, and in operating said road or roads, including all necessary agents on the line, at stations, switches, water tanks, and all others necessary to the successful operation of a railroad, shall be protected in the discharge of their duties, and at all times subject to the Indian intercourse laws, now or which may hereafter be enacted and be in force in the Cherokee Nation.

ARTICLE 12. The Cherokees agree that a general council, consisting of delegates elected by each nation or tribe lawfully residing within the Indian Territory, may be annually convened in said Territory, which council shall be organized in such manner and possess such powers as hereinafter prescribed.

First. After the ratification of this treaty, and as soon as may be deemed practicable by the Secretary of the Interior, and prior to the first session of said council, a census or enumeration of each tribe lawfully resident in said Territory shall be taken under the direction of the Commissioner of Indian Affairs, who for that purpose is hereby authorized to designate and appoint competent persons, whose compensation shall be fixed by the Secretary of the Interior, and paid by the United States.

Second. The first general council shall consist of one member from each tribe, and an additional member for each one thousand Indians, or each fraction of a thousand greater than five hundred, being members of any tribe lawfully resident in said Territory, and shall be selected by said tribes respectively, who may assent to the establishment of said general council; and if none should be thus formally selected by any nation or tribe so assenting, the said nation or tribe shall be represented in said general council by the chief or chiefs and headmen of said tribes, to be taken in the order of their rank as recognized in tribal usage, in the same number and proportion as above indicated.

After the said census shall have been taken and completed, the superintendent of Indian affairs shall publish and declare to each tribe assenting to the establishment of such council the number of members of such council to which they shall be entitled under the provisions of this article, and the persons entitled to represent said tribes shall meet at such time and place as he shall approve; but thereafter the time and place of the sessions of said council shall be determined by its action: Provided, That no session in any one year shall exceed the term of thirty days: And provided, That special sessions of said council may be called by the Secretary of the Interior whenever in his judgment the interest of said tribes shall require such special session.

Third. Said general council shall have power to legislate upon matters pertaining to the intercourse and relations of the Indian tribes and nations and colonies of freedmen resident in said Territory; the arrest and extradition of criminals and offenders escaping from one tribe to another, or into any community of freedmen; the administration of justice between members of different tribes of said Territory and persons other than Indians and members of said tribes or nations; and the common defense and safety of the nations of said Territory. All laws enacted by such council shall take effect at such time as may therein be provided, unless suspended by direction of the President of the United States. No law shall be enacted inconsistent with the Constitution of the United States, or laws of Congress, or existing treaty stipulations with the United States. Nor shall said council legislate upon matters other than those above indicated: Provided, however, That the legislative power of such general council may be enlarged by the consent of the national council of each nation or tribe assenting to its establishment, with the approval of the President of the United States.

Fourth. Said council shall be presided over by such person as may be designated by the Secretary of the Interior.

Fifth. The council shall elect a secretary, whose duty it shall be to keep an accurate record of all the proceedings of said council, and who shall transmit a true copy of all such proceedings, duly certified by the presiding officer of such council, to the Secretary of the Interior, and to each tribe or nation represented in said council, immediately after the sessions of said council shall terminate. He shall be paid out of the Treasury of the United States an annual salary of five hundred dollars.

Sixth. The members of said council shall be paid by the United States the sum of four dollars per diem during the term actually in attendance on the sessions of said council,

and at the rate of four dollars for every twenty miles necessarily traveled by them in going from and returning to their homes, respectively, from said council, to be certified by the secretary and president of the said council.

ARTICLE 13. The Cherokees also agree that a court or courts may be established by the United States in said Territory, with such jurisdiction and organized in such manner as may be prescribed by law: Provided. That the judicial tribunals of the nation shall be allowed to retain exclusive jurisdiction in all civil and criminal cases arising within their country in which members of the nation, by nativity or adoption, shall be the only parties, or where the cause of action shall arise in the Cherokee Nation, except as otherwise provided in this treaty.

ARTICLE 14. The right to the use and occupancy of a quantity of land not exceeding one hundred and sixty acres, to be selected according to legal subdivisions in one body, and to include their improvements, and not including the improvements of any member of the Cherokee Nation, is hereby granted to every society or denomination which has erected, or which with the consent of the national council may hereafter erect, buildings within the Cherokee country for missionary or educational purposes. But no land thus granted, nor buildings which have been or may be erected thereon, shall ever be sold or otherwise disposed of except with the consent and approval of the Cherokee national council and the Secretary of the Interior. And whenever any such lands or buildings shall be sold or disposed of, the proceeds thereof shall be applied by said society or societies for like purposes within said nation, subject to the approval of the Secretary of the Interior.

ARTICLE 15. The United States may settle any civilized Indians, friendly with the Cherokees and adjacent tribes, within the Cherokee country, on unoccupied lands east of 96o, on such terms as may be agreed upon by any such tribe and the Cherokees, subject to the approval of the President of the United States, which shall be consistent with the following provisions, viz: Should any such tribe or band of Indians settling in said country abandon their tribal organization, there being first paid into the Cherokee national fund a sum of money which shah sustain the same proportion to the then existing national fund that the number of Indians sustain to the whole number of Cherokees then residing in the Cherokee country, they shall be incorporated into and ever after remain a part of the Cherokee Nation, on equal terms in every respect with native citizens. And should any such tribe, thus settling in said country, decide to preserve their tribal organizations, and to maintain their tribal laws, customs, and usages, not inconsistent with the constitution and laws of the Cherokee Nation, they shall have a district of country set off for their use by metes and bounds equal to one hundred and sixty acres, if they should so decide, for each man, woman, and child of said tribe, and shall pay for the same into the national fund such price as may be agreed on by them and the Cherokee Nation, subject to the approval of the President of the United States, and in cases of disagreement the price to be fixed by the President.

And the said tribe thus settled shall also pay into the national fund a sum of money, to be agreed on by the respective parties, not greater in proportion to the whole existing national fund and the probable proceeds of the lands herein ceded or authorized to be ceded or sold than their numbers bear to the whole number of Cherokees then residing in said country, and thence afterwards they shall enjoy all the rights of native Cherokees. But no Indians who have no tribal organizations, or who shall determine to

abandon their tribal organizations, shall be permitted to settle east of the 96o of longitude without the consent of the Cherokee national council, or of a delegation duly appointed by it, being first obtained. And no Indians who have and determine to preserve the tribal organizations shall be permitted to settle, as herein provided, east of the 96o of longitude without such consent being first obtained, unless the President of the United States, after a full hearing of the objections offered by said council or delegation to such settlement, shall determine that the objections are insufficient, in which case he may authorize the settlement of such tribe east of the 96o of longitude.

ARTICLE 16. The United States may settle friendly Indians in any part of the Cherokee country west of 96o, to be taken in a compact form in quantity not exceeding one hundred and sixty acres for each member of each of said tribes thus to be settled; the boundaries of each of said districts to be distinctly marked, and the land conveyed in fee-simple to each of said tribes to be held in common or by their members in severalty as the United States may decide.
Said lands thus disposed of to be paid for to the Cherokee Nation at such price as may be agreed on between the said parties in interest, subject to the approval of the President; and if they should not agree, then the price to be fixed by the President. The Cherokee Nation to retain the right of possession of and jurisdiction over all of said country west of 96o of longitude until thus sold and occupied, after which their jurisdiction and right of possession to terminate forever as to each of said districts thus sold and occupied.

ARTICLE 17. The Cherokee Nation hereby cedes, in trust to the United States, the tract of land in the State of Kansas which was sold to the Cherokees by the United States, under the provisions of the second article of the treaty of 1835; and also that strip of the land ceded to the nation by the fourth article of said treaty which is included in the State of Kansas, and the Cherokees consent that said lands may be included in the limits and jurisdiction of the said State.

The lands herein ceded shall be surveyed as the public lands of the United States are surveyed, under the direction of the Commissioner of the General Land-Office, and shall be appraised by two disinterested persons, one to be designated by the Cherokee national council and one by the Secretary of the Interior, and, in case of disagreement [948] by a third person, to be mutually selected by the aforesaid appraisers. The appraisement to be not less than an average of one dollar and a quarter per acre, exclusive of improvements.

And the Secretary of the Interior shall, from time to time, as such surveys and appraisments are approved by him, after due advertisements for sealed bids, sell such lands to the highest bidders for cash, in parcels not exceeding one hundred and sixty acres, and at not less than the appraised value: Provided, That whenever there are improvements of the value of fifty dollars made on the lands not being mineral, and owned and personally occupied by any person for agricultural purposes at the date of the signing hereof, such person so owning, and in person residing on such improvements, shall, after due proof, ,made under such regulations as the Secretary of the Interior may prescribe, be entitled to buy, at the appraised value, the smallest quantity of land in legal subdivisions which will include his improvements, not exceeding in the aggregate one hundred and sixty acres; the expenses of survey and appraisement to be paid by the Secretary out of the proceeds of sale of said land:

Provided, That nothing in this article shall prevent the Secretary of the Interior from selling the whole of said lands not occupied by actual settlers at the date of the ratification of this treaty, not exceeding one hundred and sixty acres to each person entitled to pre-emption under the pre-emption laws of the United States, in a body, to any responsible party, for cash, for a sum not less than one dollar per acre.

ARTICLE 18. That any lands owned by the Cherokees in the State of Arkansas and in States east of the Mississippi may be sold by the Cherokee Nation in such manner as their national council may prescribe, all such sales being first approved by the Secretary of the Interior.

ARTICLE 19. All Cherokees being heads of families residing at the date of the ratification of this treaty on any of the lands herein ceded, or authorized to be sold, and desiring to remove to the reserved country, shall be paid by the purchasers of said lands the value of such improvements, to be ascertained and appraised by the commissioners who appraise the lands, subject to the approval of the Secretary of the Interior; and if he shall elect to remain on the land now occupied by him, shall be entitled to receive a patent from the United States in fee-simple for three hundred and twenty acres of land to include his improvements, and thereupon he and his family shall cease to be members of the nation.
And the Secretary of the interior shall also be authorized to pay the reasonable costs and expenses of the delegates of the southern Cherokees.
The moneys to be paid under this article shall be paid out of the proceeds of the sales of the national lands in Kansas.

ARTICLE 20. Whenever the Cherokee national council shall request it, the Secretary of the Interior shall cause the country reserved for the Cherokees to be surveyed and allotted among them, at the expense of the United States.

ARTICLE 21. It being difficult to learn the precise boundary line between the Cherokee country and the States of Arkansas, Missouri, and Kansas, it is agreed that the United States shall, at its own expense, cause the same to be run as far west as the Arkansas, and marked by permanent and conspicuous monuments, by two commissioners, one of whom shall be designated by the Cherokee national council.

ARTICLE 22. The Cherokee national council, or any duly appointed delegation-thereof, shall have the privilege to appoint an agent to examine the accounts of the nation with the Government of the United States at such time as they may see proper, and to continue or discharge such agent, and to appoint another, as may be thought best by such council or delegation; and such agent shall have free access to all accounts and books in the executive departments relating to the business of said Cherokee Nation, and an opportunity to examine the same in the presence of the of officer having such books and papers in charge.

ARTICLE 23. All funds now due the nation, or that may hereafter accrue from the sale of their lands by the United States, as hereinbefore provided for, shall be invested in the United States registered stocks at their current value, and the interest on all said funds shall be paid semi-annually on the order of the Cherokee Nation, and shall be applied to the following purposes, to wit: Thirty-five per cent. shall be applied for the support of the common-schools of the nation and educational purposes; fifteen per cent, for the

orphan fund, and fifty per cent, for general purposes, including reasonable salaries of district officers; and the Secretary of the Interior, with the approval of the President of the United States, may pay out of the funds due the nation, on the order of the national council or a delegation duly authorized by it, such amount as he may deem necessary to meet outstanding obligations of the Cherokee Nation, caused by the suspension of the payment of their annuities, not to exceed the sum of one hundred and fifty thousand dollars.

ARTICLE 24. As a slight testimony for the useful and arduous services of the Rev. Evan Jones, for forty years a missionary in the Cherokee Nation, now a cripple, old and poor, it is agreed that the sum of three thousand dollars be paid to him, under the direction of the Secretary of the Interior, out of any Cherokee fund in or to come into his hands not otherwise appropriated.

ARTICLE 25. A large number of the Cherokees who served in the Army of the United States having died, leaving no heirs entitled to receive bounties and arrears of pay on account of such service, it is agreed that all bounties and arrears for service in the regiments of Indian United States volunteers which shall remain unclaimed by any person legally entitled to receive the same for two years from the ratification of this treaty, shall be paid as the national council may direct, to be applied to the foundation and support of an asylum for the education of orphan children, which asylum shall be under the control of the national council, or of such benevolent society as said council may designate, subject to the approval of the Secretary of the Interior.

ARTICLE 26. The United States guarantee to the people of the Cherokee Nation the quiet and peaceable possession of their country and protection against domestic feuds and insurrections, and against hostilities of other tribes. They shall also be protected against inter(r)uptions or intrusion from all unauthorized citizens of the United States who may attempt to settle on their lands or reside in their territory. In case of hostilities among the Indian tribes, the United States agree that the party or parties commencing the same shall, so far as practicable, make reparation for the damages done.

# EXHIBIT 2

AUG-11-2003  13:27
03/29/2002 16:42 FAX                                                    P.03
                                                                       ☑ 001



# United States Department of the Interior

### OFFICE OF THE SECRETARY
### WASHINGTON, D.C.  20240

MAR 15 2002

Honorable Chadwick Smith
Principal Chief, Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 7446-0948

Dear Chief Smith:

This is in response to your letter of November 7, 2001, requesting my decision on the proposed amendment to the 1975 Cherokee Nation Constitution ("the 1975 Constitution") that, if enacted and approved, would remove the provision requiring the Secretary's approval of constitutional amendments.

Article XV, Section 10, of the 1975 Constitution provides that "[n]o amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative." You have advised that the proposed referendum regarding the amendment that is at issue here would be presented to the Cherokee voters in the following form:

### REFERENDUM ON CONSTITUTIONAL AMENDMENT

Article XV, Section 10 of the Cherokee Nation Constitution, adopted by the Cherokee people on June 26, 1975, states: "No amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative."

SHALL ARTICLE XV, SECTION 10 OF THE CHEROKEE NATION CONSTITUTION BE STRICKEN TO ABOLISH THE REQUIREMENT OF FEDERAL APPROVAL OF THE AMENDMENTS OR NEW CONSTITUTIONS OF THE CHEROKEE NATION?

YES        TO REMOVE THE FEDERAL APPROVAL REQUIREMENT

NO         TO RETAIN THE FEDERAL APPROVAL REQUIREMENT.

We have no objection to the referendum as proposed and I am prepared to approve the amendment deleting the requirement for Federal approval of future amendments, subject to certain understandings. First, all members of the Cherokee Nation, including the Freedmen descendants who are otherwise qualified, must be provided an equal opportunity to vote in the election. Second, under current law, no amendment of the

FILED
AUG 11 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Nation's Constitution can eliminate the Freedmen from membership in the Nation absent Congressional authorization.  And, lastly, notwithstanding any amendment of the Nation's Constitution, the Act of October 22, 1970 (84 Stat. 1091), until it is repealed or amended, will still require Secretarial approval of the procedures for the election of the leaders of the Cherokee Nation and the other of the Five Civilized Tribes.

If you have any questions, please do not hesitate to call me.

                              Sincerely,

                              Assistant Secretary - Indian Affairs

cc:   Regional Director, Eastern Oklahoma Region
      Field Solicitor's Office, Tulsa

# EXHIBIT 3

AUG-11-2003  13:28                                                          P.06
ITH 03 '02  08:03AM BIA MUSKOGEE                                            P.1
MAY-2-2002  28:27A FROM:GOVERNMENT SVCS. 518 453 7533       TO:6672571      P.2



# United States Department of the Interior

### OFFICE OF THE SECRETARY
#### Washington, D.C. 20240

APR 23 2002

Honorable Chad Smith
Principal Chief
Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma  74465-0948

Dear Chief Smith:

This is in response to your letter of November 7, 2001, requesting my decision on the proposed amendment to the 1975 Cherokee Nation Constitution ("the 1975 Constitution") that, if enacted and approved, would remove the provision requiring the Secretary's approval of constitutional amendments. Before responding to the substance of your request, I want to clarify that I understand that you recently received a letter dated March 15, 2002, purportedly signed by me relating to this same subject. I did not sign the March 15 letter and did not authorize the use of the autopen to engross my signature on the letter. The letter is of no validity or effect and should be disregarded.

As to the substance of your request, Article XV, Section 10, of the 1975 Constitution provides that "[n]o amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative." You have advised that the proposed referendum regarding the amendment that is at issue here would be presented to the Cherokee voters in the following form:

#### REFERENDUM ON CONSTITUTIONAL AMENDMENT

Article XV, Section 10 of the Cherokee Nation Constitution, adopted by the Cherokee people on June 26, 1976, states: "No amendment or new Constitution shall become effective without the approval of the President of the United States or his authorized representative."

SHALL ARTICLE XV, SECTION 10 OF THE CHEROKEE NATION CONSTITUTION BE STRICKEN TO ABOLISH THE REQUIREMENT OF FEDERAL APPROVAL OF THE AMENDMENTS OR NEW CONSTITUTIONS OF THE CHEROKEE NATION?

OFFICE OF THE PRINCIPAL C

APR 2 9 2002

RECEIVED BY

3/2002 FRI 09:01  [TX/RX NO 6169]

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

2

YES    TO REMOVE THE FEDERAL APPROVAL
       REQUIREMENT.

NO     TO RETAIN THE FEDERAL APPROVAL
       REQUIREMENT.

We have no objection to the referendum as proposed and I am prepared to approve the
amendment deleting the requirement for Federal approval of future amendments.  Until it is
repealed or amended, the Act of October 22, 1970 (94 Stat. 1091), will, however, still apply.

If you have any questions, please don't hesitate to call me.

                              Sincerely,

                              Neal A. McCaleb
                              Assistant Secretary-Indian Affairs

# EXHIBIT 4

AUG-11-2003  13:30                                                            P.09

Tribal Operations

MAY   8  2002

Honorable Chadwick Smith
Principal Chief, Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 74465

Dear Chief Smith:

The Act of October 22, 1970, 84 Stat. 1091 ("the Act"), provides that the procedures for the election of the Principal Chiefs of the Five Civilized Tribes must be approved by the Secretary; however, in recent elections, these procedures have not been submitted for approval.

The United States District Court for the District of Columbia recently held that the Act remains in full force and effect:  Seminole Nation of Oklahoma v. Norton, Case No. 00-CV-02384 (CKK) (D.D.C. Memorandum Opinion Sept. 27, 2001).  Based upon the recommendation of the Field Solicitor, we are advising each of the Five Civilized Tribes that their election code, to the extent it sets forth procedures for the election of Principal Chief, must be approved.

If you have any questions regarding this matter, please contact Karen Ketcher, Tribal Operations Officer at (918) 687-2313.

Respectfully,

Acting

(Sgd.) Dennis C. Springwater

Director

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 5



# CHEROKEE NATION
### P.O. Box 948
### Tahlequah, OK 74465-0948
### 918-456-0671

Chad "Corntassel" Smith
OᏇ ᏣᎩ
Principal Chief

Hastings Shade
OᏇ Ꮷ Ꮝh
Deputy Principal Chief

May 13, 2003

Ms. Jeanette Hanna
Director, Eastern Oklahoma Regional Office
US Bureau of Indian Affairs
P. O. Box 8002
Muskogee, Ok. 74402-8002

Dear Ms. Hanna:

Principal Chief Smith advised me to respond to your recent inquiry concerning the submission of election procedures for Secretarial approval under the Act of October 22, 1970 (84 Stat. 1099). We believe the Secretary's statutory responsibility has been fulfilled in regard to "approving" Cherokee Nation election procedures.

The Constitution of the Cherokee Nation was approved by the Commissioner of Indian Affairs on September 25, 1975. This Constitution was subsequently ratified by the Cherokee voters and is the organic governmental authority for this Nation. Specifically, Articles V, VI, and IX provide the procedure to be followed in the conduct of elections for the Principal Chief as well as the Deputy Chief and other officials.

Thus, the Constitution, as amended, governs our election procedures. Except for amendments to the Constitution, we are not aware of any previous submission of election procedures to the Bureau for Secretarial approval. The current election law, Legislative Act 7-97, was enacted consistent with the terms of the Constitution and is codified in Title 26 of the Cherokee Nation Code. The code is available for public review and may be copied from the Cherokee Nation's Internet Web Site (cherokee.org).

We trust this is responsive to your recent inquiry. We will be pleased to have further discussion with you if you believe it is necessary.

Sincerely,

*Signed Pat Ragsdale*

Pat Ragsdale
Executive Director
Government Resources

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON CLERK
U.S. DISTRICT COURT

# EXHIBIT 6

AUG-11-2003  13:31                                                                P.13



# United States Department of the Interior
### BUREAU OF INDIAN AFFAIRS
Eastern Oklahoma Regional Office
P.O. Box 8002
Muskogee, OK 74402-8002

IN REPLY REFER TO:

June 23, 2003

I, Letha Wilson and Mr. Dennis C. Springwater received the Cherokee Nation Election Results from Mr. Raymond Vann on June 23, 2003 at 12:10 p.m. at the Eastern Oklahoma Regional Director's Office.

*[signature]* 6/23/03

TRIBAL GOVT SERVICES
BIA - EORO
2003 JUN 24 A 10:30

RECEIVED
FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 7

AUG-11-2003  13:32                                                              P.15



**CHEROKEE NATION ELECTION COMMISSION**
P. O. Box 1188
Tahlequah, Oklahoma 74465-1188
(918) 458-5899 / 1-800-353-2895 / Fax (918) 458-6101

June 23, 2003

United States Department of the Interior
Bureau of Indian Affairs
Jeannette Hannah
Area Director
Muskogee Area Office
101 N. 5th Street
Muskogee, OK  74401-6206

Dear Ms. Hannah:

We, the undersigned election officials of the Cherokee Nation Election Commission do hereby certify the below to be the election outcome results of the Cherokee Nation Election held on Saturday, May 24, 2003. We further certify that these results reflect the outcome of a recount conducted on May 30, 2003 and an appeal and ruling by the JAT on June 17, 2003. We further certify that said election was conducted in accordance with L. A. 7-97, the Constitution of the Cherokee Nation, the Cherokee Nation Code Annotated and the Rules and Regulations of the Cherokee Nation.

| | | |
|---|---|---|
| Principal Chief | Chad "Corntassel" Smith | |
| Council Member -- District 1 | Audra Smoke-Conner | Bill John Baker |
| Council Member -- District 2 | S. Joe Crittenden | Jackie Bob Martin |
| Council Member -- District 3 | Phyllis Yargee | David W. Thornton, Sr. |
| Council Member -- District 5 | Melvina Shotpouch | Linda Hughes O'Leary |
| Council Member -- District 6 | Johnny Keener | Meredith A. Frailey |
| Council Member -- District 8 | William "Bill" Johnson | Buel Anglen |
| Council Member -- District 9 | Charles "Chuck" Hoskin | |

| | |
|---|---|
| Referendum on Constitutional Amendment | Yes - 7017 |
| | No - 4223 |

We would appreciate a written response of approval or disapproval of this certification of results within thirty (30) days. Also enclosed is the Final Report of the Cherokee Nation Official Election Results.

Respectfully submitted this 23rd day of June 2003.

Chairperson: _____       Member: _____

Member: _____            Member: _____

Member: _____            Cherokee Nation Election Commission

Encl.

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**CHEROKEE NATION ELECTION COMMISSION**

John W. Adair, Chairperson
Martha Calico, Vice Chairperson
Kyle B. Haskins, Secretary
Rita Bunch, Member
Raymond Vann, Member

P.O.Box 1188, Tahlequah, Oklahoma 74465-1188
Phone: (918) 458-5899 1-800-353-2895 Fax (918) 458-6101
E-Mail: election_commission@cherokee.org

**From:** Cherokee Nation Election Commission

**To:** Cherokee Judicial Appeals Tribunal

**Date:** June 19, 2003

**Subject:** Certification of the Cherokee Nation General Election of May 24, 2003

**Reference:** (1) Legislative Act 7-97 § 93 D

(2) JAT Certification of subject election as per results of the election recount held at the Cherokee Nation Election Commission Offices, Tahlequah, Oklahoma on May 30, 2003.

### ELECTION CERTIFICATION

We, the undersigned members of the Cherokee JAT , do hereby certify the above to be a true and accurate abstract of the votes cast in the election held on the 24th day of May, 2003. We further certify that these results reflect the outcome of a recount conducted on the thirtieth day of May, 2003 and an appeal and ruling by the JAT on June 17, 2003. The said election and subsequent recount were conducted in accordance with the Constitution, Election Act and the Rules and Regulations of the Cherokee Nation .

Signed

Justice D. Dowty: _____

Justice S. Leeds: _____

Justice D. Matlock: _____



**CHEROKEE NATION ELECTION COMMISSION**

PO Box 1188  Tahlequah, Oklahoma 74465-1188
Phone: (918) 458-5896  1-800-165-2894 | Fax (918) 458-6101
E-Mail: election_commission@cherokee.org

John W. Adair, Chairperson
Martha Calico, Vice Chairperson
Kyle B. Haskins, Secretary
Rita Bunch, Member
Raymond Vann, Member

From: Cherokee Nation Election Commission

To: Cherokee Judicial Appeals Tribunal

Date: June 19, 2003

Subject: Certification of the Cherokee Nation General Election of May 24, 2003

Reference: (1) Legislative Act 7-97 § 93 D

(2) JAT Certification of subject election as per results of the election recount held at the Cherokee Nation Election Commission Offices, Tahlequah, Oklahoma on May 30, 2003.

ELECTION CERTIFICATION

We, the undersigned members of the Cherokee JAT, do hereby certify the above to be a true and accurate abstract of the votes cast in the election held on the 24th day of May, 2003. We further certify that these results reflect the outcome of a recount conducted on the thirtieth day of May, 2003 and an appeal and ruling by the JAT on June 17, 2003. The said election and subsequent recount were conducted in accordance with the Constitution, Election Act and the Rules and Regulations of the Cherokee Nation.

Signed

Justice D. Dowty:

Justice S. Leeds:

Justice D. Matlock:

AUG-11-2003  13:33  
General Election  
Election held May 24, 2003

P.18

| | VOTES | PERCENTAGE |
|---|---|---|
| Joe Byrd | 5457 | 39.14% |
| Chad "Corntassel" Smith | 7303 | 52.37% |
| Robin Carter Mayes | 215 | 1.54% |
| L.S. Fields | 969 | 6.96% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Gary D. Chapman | 4540 | 33.01% |
| John Cornsilk | 754 | 5.48% |
| Hastings Shade | 3256 | 23.67% |
| Joe Grayson, Jr. | 5205 | 37.84% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Harley L. Terrell | 473 | 9.24% |
| Brian R. Berry | 258 | 4.31% |
| Art Floyd | 73 | 1.27% |
| Barbara Dawes Martais | 744 | 12.97% |
| Audra Smoke-Conner | 802 | 13.98% |
| Ron Qualls | 96 | 1.67% |
| Billy R. McCoy | 31 | 0.54% |
| Don "Chief" Crittenden | 561 | 9.78% |
| Billy Heath | 287 | 5.00% |
| Freddie Ferrell, Jr. | 302 | 5.26% |
| Roger Barr | 277 | 4.83% |
| Ricky D. Gassaway | 733 | 12.78% |
| Teresa Tackett | 274 | 4.78% |
| Bill John Baker | 825 | 14.36% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Mary Adair | 388 | 6.30% |
| Trina L. Rector Burdge | 232 | 6.73% |
| Joe Harold Bunch | 376 | 10.90% |
| Ralph Keen, Jr. | 326 | 9.72% |
| S. Joe Crittenden | 433 | 12.56% |
| Woodrow "Woody" Proctor | 236 | 6.84% |
| James "Garland" Eagle | 362 | 10.50% |
| Tom A. Cochran | 301 | 8.73% |
| Billie J. Drywater Pain | 103 | 2.99% |
| Jackie Bob Martin | 682 | 19.78% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Phyllis Yargee | 578 | 21.82% |
| Sam Ed Bush , Jr. | 536 | 20.47% |
| David W. Thornton, Sr. | 574 | 21.84% |
| Mary Flute-Cooksey | 467 | 17.77% |
| Edith Locust Dalton | 473 | 18.00% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Cherokee Jewel Hicks | 63 | 4.81% |
| Rev. Gary Carey, Sr. | 67 | 5.11% |
| Calvin Rock | 532 | 40.61% |
| Bo Highers | 24 | 1.83% |
| Don Garvin | 624 | 47.63% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Quanah Blackwood | 280 | 12.99% |
| Jimmy (Jim) Thompson | 432 | 20.04% |
| Melvina Shotpouch | 566 | 26.25% |
| John Stevenson | 304 | 14.10% |
| Linda Hughes O'Leary | 574 | 26.62% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Stephanie Wickliffe Shepherd | 313 | 16.39% |
| Johnny Keener | 341 | 21.13% |
| David J. Standingwater | 229 | 14.19% |
| Shorty Cooper | 181 | 11.21% |
| Meredith A. Frailey | 353 | 21.87% |
| Robert Backward | 197 | 12.21% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Harold DeMoss | 311 | 33.55% |
| Cara Cowan | 616 | 66.45% |

| | VOTES | PERCENTAGE |
|---|---|---|
| William "Bill" Johnson | 706 | 25.29% |
| Buel Anglen | 867 | 35.36% |
| Nick Lay | 531 | 19.02% |
| Anita McSpadden Boone | 568 | 20.34% |

| | VOTES | PERCENTAGE |
|---|---|---|
| Charles "Chuck" Hoskin | 525 | 56.88% |
| Robert P. (Bob) McSpadden | 398 | 43.12% |

| | VOTES | PERCENTAGE |
|---|---|---|
| YES, To Remove the Federal Approval Requirement | 7017 | 62.43% |
| NO, To Retain the Federal Approval Requirement | 4223 | 37.57% |

ELECTION CERTIFICATION

We, the undersigned members of the Cherokee Nation Election Commission, do hereby certify the above to be a true and accurate abstract of the votes cast in the election held on the 24th day of May, 2003. We further certify that these results reflect the outcome of a recount conducted on the thirtieth day of May, 2003 and an appeal and ruling by the JAT. The election, and subsequent recount, and decision by the JAT were conducted in accordance with the Constitution, Election Act and the Rules and Regulations of the Cherokee Nation.

signed

Chairperson:

Vice Chairperson: _Martha Calico_

Secretary/Treasurer: _Rita Bunch_

Member:

Member: _Kayd Van_

# EXHIBIT 8

Tribal Operations

JUN 30 2003

Mr. Raymond Vann
Member, Cherokee Nation Election Commission
P. O. Box 1188
Tahlequah, Oklahoma 74465-1188

Dear Mr. Vann:

This letter acknowledges receipt of a copy of a certification of results of the Cherokee Nation Election held Saturday, May 24, 2003.  In this copy, the Election Commission certified that the results reflect the outcome of a recount conducted on May 30, 2003, and an appeal and ruling by the Judicial Appeals Tribunal held on June 17, 2003.

The Region respectfully requests that the original of the June 23, 2003 certification letter be forwarded to this office with the appropriate signature(s).  In addition, in order to make a complete and thorough review of the referendum question, the Tribe must submit documentation of its compliance with the procedural and administrative requirements set forth in the Tribe's Constitution and Election Ordinance.  The Bureau will act as expeditiously as possible on this matter.

If you have any questions or require further explanation of the required documentation, please contact Karen Ketcher, Tribal Operations Officer, at (918) 781-4685.

Respectfully,

(Sgd) Jeanette Hanna

Regional Director

KKETCHER:kk:06-24-03
File – Cherokee Election 2003
chrony
mailroom
EORD

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 9

AUG-11-2003  13:34

P.22

Tribal Operations

JUL 11 2003

Honorable Chadwick Smith
Principal Chief, Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 74465

Dear Chief Smith:

This letter is regarding matters related to the Cherokee Nation Election of May 24, 2003. The Eastern Oklahoma Regional Office (EORO) is in receipt of a June 23, 2003 letter from the Cherokee Nation Election Commission certifying the results of the election for the offices of Principal Chief and certain Council representatives, certifying the results of the Referendum on Constitutional Amendments, and requesting a written response of approval or disapproval of this certification of results within thirty (30) days. The Region is aware of no requirement that the Department of the Interior certify the election as to Council representatives.

While the Region is aware of no requirement that the Department certify the Election for the office of Principal Chief, the Nation has been advised on two occasions regarding the requirements of the Principal Chiefs Act of October 22, 1970, 84 Stat. 1091. The Act provides that the procedures for the election of the Principal Chiefs of the Five Civilized Tribes must be approved by the Secretary. As you know, the United States District Court for the District of Columbia held that the Act remains in full force and effect. Seminole Nation of Oklahoma v. Norton, Case No. 00-CV-02384 (CKK) (Memorandum Opinion of September 27, 2001). In the referenced correspondence, the Nation was asked to submit its current election laws and procedures for approval.

On May 31, 2003, the Executive Director, Cherokee Nation Government Resources Division, responded to the Region's request by referring the Department to the Cherokee Nation Constitution and Title 26 of the Cherokee Nation Code and advised that the code is available for public review and may be copied from the Cherokee Nation's internet web site. Please advise whether the referral was intended to constitute the extent of the Cherokee Nation's correspondence regarding this issue. It does appear that such review and approval is necessary before the Department can recognize the results of the May 24, 2003, election as it pertains to the office of the Principal Chief.

Further, it is presumed that the request to certify the election as it pertains to the Referendum on the Constitutional Amendment is a request for approval of the Amendment itself pursuant to Article XV, Section 10, of the Cherokee Nation Constitution.

FILED
AUG 11 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AUG-11-2003  13:35                                                    P.23

Prior to his retirement, Assistant Secretary - Indian Affairs Neal McCaleb indicated a willingness to approve the amendment as it had been presented to him in draft form if proper procedures were followed by the Nation. In order to expedite the review of the Referendum on the Constitutional Amendment, please provide this office with evidence necessary to establish the Nation's compliance with the substantive and procedural election requirements set forth in the Cherokee Nation Constitution and the Cherokee Nation Code.

With the Amendment in mind, this office understands that a new constitution has been proposed and is slated to be presented to the Cherokee Nation voters during the run-off election scheduled for July 26, 2003. It should be noted that the Amendment, which would remove the requirement of Federal approval of constitutional amendments to the Cherokee Nation Constitution or a new constitution, has not been approved at this time. Accordingly, if the Cherokee Nation's presentation to the Cherokee voters of a new constitution is in some way premised upon the Amendment that the voters adopted on May 24, 2003, it is premature at this time.

Finally, the Acting Assistant Secretary - Indian Affairs has received the enclosed correspondence from an attorney who represents several Cherokee Freedmen. As part of the review of the Amendment, the Region would like to consider the Cherokee Nation's position regarding the issues raised in that correspondence. Please convey a position, if any, to the Region as soon as possible so that deliberations on this matter may proceed as expeditiously as possible.

Thank you for your continued cooperation regarding this matter. If you have any questions, please do not hesitate to contact this office.

Respectfully,

(Sgd) Jeanette Hanna

Regional Director

Enclosures

cc:    Acting Assistant Secretary - Indian Affairs
       Office of the Tulsa Field Solicitor
       Attn: Charles R. Babst, Jr.

# EXHIBIT 10

AUG-11-2003  13:36                                                              P.25



# CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74465-0948
918-456-0671

Chad "Corntassel" Smith
ᎠᏣᎳᎩ
Principal Chief

Hastings Shade
ᎠᏣᎳᎩ
Deputy Principal Chief

July 14, 2003

Ms. Jeannette Hanna
Regional Director
Eastern Oklahoma Regional Office
P.O. Box 8002
Muskogee, Ok. 74401-6206

Re: Cherokee Nation Election of May 24, 2003

Dear Ms. Hanna:

This is in response to your letter apparently misdated June 11, 2003 concerning matters related to our election of May 24, 2003 that was received by fax on Friday, July 11, at 4:00 PM.

The matters addressed in your letter concern the fundamental rights of Cherokee self-government. Therefore, the Department of the Interior should speak as one voice and respond to the concerns of the Cherokee Nation. Accordingly, I have requested this matter of importance be immediately elevated to the Secretary for resolution.

For the record, I view this exchange of correspondence to be a precursor to a final decision for the Department and therefore, reserve all of the Cherokee Nation's right to appeal in any legal forum, if the decision is adverse to the interest of the Nation.

In this age of self-determination and self-governance, I am shocked to find the contents and tone of your letter to be both patronizing and very paternalistic. It appears that some officials in your Department desire to return to the era of "bureaucratic imperialism." In *Harjo v. Kleppe (1976)*, this is how the Court characterized the Department's actions over the affairs of the Five Nations for the majority of the 20th Century, and specifically referred to the interference in the election of the Principal Chief.

> *"During the period immediately following the approval of the Five Tribes Act, the Interior Department behaved as though it had been successful in its efforts to prevent the enactment of § 28 and the Congressional changes made in its draft of § 6. The available evidence clearly reveals a pattern of action on the part of the Department and its Bureau of Indian Affairs designed to prevent any tribal resistance to the Department's methods of administering those Indian affairs delegated to it by Congress. This*

1

FILED
AUG 11 2003
NANCY MAYER WHITTINGTON
U.S. DISTRICT COURT CLERK

> *attitude, which can only be characterized as bureaucratic imperialism, manifested itself in deliberate attempts to frustrate, debilitate, and generally prevent from functioning the tribal governments expressly preserved by § 28 of the Act."*
> *(Harjo v. Kleppe (1976))*

I would suggest that your attorneys review the above, consider the required canons of construction, and measure your proposed actions against solemn pronouncements of self-determination policy by the Congress and President that your agency appears to ignore.

It is my hope that a satisfactory resolution of these matters can be had.  If not, we will seek a resolution in the courts as we have since the 1830's in order to obtain justice and right.  I am saddened that the Department would hold hostage the Cherokee citizens' mandate to manage their own affairs. We have faithfully conducted our election under the terms of the Constitution of the Cherokee Nation and have honored our part of the government-to-government and trust relationships with the United States. We ask the Department of Interior to do the same.

I will address the specifics of your misdated letter paragraph by paragraph, as enumerated, which follows:

1.  **Page 1, Paragraph 1,** you state, "The Region is aware of no requirement that the Department of the Interior certify the election as to Council representatives."

Response:  The notice to your office and transmittal of the certification by the Election Commission of the results of the elected officers, i.e. the Principal Chief and Council members, was not for the purpose of requesting Departmental certification. The Department does not run Cherokee elections nor supervise them. The purpose of the notice was for recognition of leadership on a government-to-government basis with the United States.

It is a fact that the Cherokee people have decided their leadership and approved a constitutional amendment on May 24, 2003 by a democratic process in accordance with Cherokee law. On July 26, 2003 they will vote on a new constitution and for two remaining run-off races to complete this democratic process. It is neither for the Department's determination nor discretion to second-guess the most basic fundamental principle of self-governance. See *Wheeler v. Swimmer, 1987* and *Nero v. Cherokee Nation and the United States, 1989.*

I strongly recommend the Department of Interior adhere to the admonition of the US Court of Appeals for the Tenth Circuit in *Nero,*

> *"Indian Tribes have a right to self-government, and the Federal government encourages tribes to exercise that right. Consequently, while the Department may be required by statute or tribal law to act in*

2

> *intratribal matters, it should act so as to avoid any unnecessary interference with a tribe's right to self-government."*

2.  Page 1, Paragraph 2, states that, "the Nation has been advised on two occasions regarding the requirements of the Principal Chief's Act of October 22, 1970." You advise further that the procedures for electing the Principal Chiefs of Five Tribes must be approved by the Secretary and cite *Seminole v. Norton, 2001* as your justification and state the Nation was asked to submit its current election laws and procedures for approval.

In paragraph 3, you reference the "May 31, 2003" letter of Pat Ragsdale, Director of Government Resources, who responded in my behalf to your request that the Cherokee Nation submit its election laws for your approval. You state, "Please advise whether the referral was intended to constitute the extent of the Cherokee Nation's correspondence regarding the issue. Further you state, "It does appear that such review and approval is necessary before the Department can recognize the results of the May 24, 2003, election as it pertains to the office of the Principal Chief."

Response:  As to your interpretation of the *Seminole* case's relevance to the Cherokee Nation, our Cherokee governmental relationship is distinguished from the Seminole relationship, as is our culture, traditions and history. The Cherokee Nation's Constitutional history dates back to the first Constitution of 1827, the Constitution of 1839, and the current Constitution that was pre-approved by the Secretary in 1975 and ratified by the Cherokee voters in 1976. The 1976 Constitution has been amended at least twice with the approval of the Secretary.

The *Seminole* decision concerns approval of Constitutional amendments. The Cherokee Nation has consistently complied with that requirement since 1975. The Secretary has exercised any responsibility under the 1970 Act by approving the Constitution in 1975 and the procedures set forth within the Cherokee Constitution. For over a quarter of a century, the Department has never to our knowledge required nor suggested that Cherokee Nation submit its internal election procedures for Departmental approval. Furthermore, the Department has recognized the elections of the Principal Chiefs of the Cherokee Nation without approving the internal laws governing such elections. The Nation has conducted six such elections:

1999 – Chadwick "Corntassel" Smith
1995 – Joe Byrd
1991 – Wilma P. Mankiller
1987 – Wilma P. Mankiller
1983 – Ross O. Swimmer
1979 – Ross O. Swimmer

3

In *Swimmer*, referenced above, the Court said,

> " *The right to conduct an election without federal interference is essential to the exercise of the right to self-government.* "

Cherokee and Seminole history is similar as far as the treatment and perfidy of the federal government during the Treaty period, however, it is different in the formations and development of our constitutional governments. I am dismayed by the inference that the Department may withhold the recognition of the Principal Chief's office in order to require submission to your demands.

Mr. Ragsdale's response was dated and delivered on May 13th not May 31st as stated in your letter. (The May 13th letter is attached). Mr. Ragsdale's letter was intended to be a courteous response to your personal request of me for information prior to the election. His response is a summary of the position of the Cherokee Nation. I note neither you nor your Department bothered to respond prior to the May 24 election. I also note that Mr. Ragsdale inquired of you and your office if the Department had a position to the contrary prior to the May 24th election and he was advised by you that there was no response from Washington.

I also wish to point out that we have had no direct government-to-government discussions on the issues to exchange our views. The brief phone conversations by me with Assistant Secretary Martin and you have revealed little. It is my understanding, based upon our conversations, that Departmental attorneys are directing this course of action.

I reaffirm the Nation's previous answer, and I state for the record that the Nation has much more in response to what appears to be a demand that we compromise our rights of self-governance.

3. Page 1, Paragraph 4, states it is presumed that we request that the Department approve the amendment voted on and approved by the Cherokee voters on May 24th, as currently required by the Cherokee Constitution.

Response: The voters of the Cherokee Nation have spoken representing the will of the Cherokee Nation. We seek federal approval and fulfillment of the Department's previous commitment. If it is needed, your presumption is correct and Mr. Ragsdale has already delivered to you a detailed "Special Report" on the process leading up to the election and has enclosed documentation of the Constitutional Convention, voter education, the relevant resolutions, acts, and the election law governing the process. (The election act is not submitted for your approval but is submitted for your reference only to facilitate your review.)

4. Page 2, Paragraph 1, references Assistant Secretary McCaleb's willingness to approve the amendment, but adds, "...if proper procedures were followed by the Nation."

4

**Response:** As stated earlier, the Special Report delivered to your office last Friday provides you with comprehensive documentation as to procedural compliance with the Constitution and laws of the Nation as well as the involvement and education of the citizens of the Cherokee Nation regarding the referendums in question.

What former Assistant Secretary McCaleb actually wrote in his letter of April 23, 2002, was;

> *"We have no objection to the referendum as proposed and I am prepared to approve the amendment deleting the requirement for Federal approval of future amendments. Until it is repealed or amended, the Act of October 22, 1970 will, however, still apply."*
> (Exactly quoted)

I note Secretary McCaleb also acknowledged in this letter of April 23rd that a previous letter dated March 15, 2002 with an entirely different message had been sent out by unauthorized use of his autopen signature and that the letter dated March 15th was of no validity or effect and should be disregarded. It appears that now that the former Assistant Secretary is retired that there are others at work to rewrite policy determinations.

**5. Page 2, paragraph 2**, states, *"if the Cherokee Nation's presentation to the Cherokee voters is premised upon the amendment that the voters adopted on May 24, 2003, it is premature at this time."*

**Response:** The Cherokee Nation relied on the Department's word expressed by Former Assistant Secretary McCaleb, and has conducted an election in the good faith belief that the Department would keep its commitment regarding the amendment which was recently approved by an overwhelming majority of Cherokee voters.

Do you intend to break the previous commitment made by the Assistant Secretary on behalf of the Department?

The democratic process that has been followed, accompanied with numerous public announcements, forums and process leading up to and to the election has not been a secret, and the Department has not been excluded from the process. This has been an expense to the Cherokee Nation of over several hundred thousand dollars.

The documentation demonstrating that the Nation has exercised due diligence and good faith is contained in the referenced report. Please review the documentation.

The Department should not break the previous commitment made by the Assistant Secretary on behalf of the Department.

**6. Page 2, paragraph 3**, you provide a copy of a letter from Velie and Velie, Attorneys at Law dated June 10, 2003 to Ms. Aurene Martin, Acting Assistant Secretary of Indian

5

Affairs. It alleges violations of the Treaty with the Cherokee Nation and requests the BIA hold the Cherokee Nation election of May 24, 2003 to be held invalid.

**Response:** Prior to making our comments on the allegations made by the law firm, we have some preliminary questions.

- Have the Velie clients exhausted all of the tribal and/or federal administrative remedies?

- If so, please provide the records for our review.

- If not, why should they not be required to do so?

### Conclusion

It appears that this issue is about to be decided by the Assistant Secretary or the Secretary. Therefore, we request the decision and dialogue between the Nation and the Department be elevated to the Washington, D.C. level in the interest of seeking resolution and determining public policy on a timely basis. We regret that it appears that you have been chosen to state the bidding of other officials in the Department who appear to have a bias against the self-governmental rights of the Cherokee Nation. We believe it in the best interest of the Nation to hear one Departmental voice and deal with one decision maker to protect our interests and preserve our right to resolve this matter in the courts if it becomes necessary.

Sincerely,

Chad Smith
Principal Chief

Attachments:

(1) May 13, 2003 letter from Pat Ragsdale, Director, Government Resources, Cherokee Nation to Jeanette Hanna, Director, USBIA, Eastern Oklahoma Region

cc:
Honorable Aurene Martin, Acting Assistant Secretary - Indian Affairs
Honorable Stephen Griles, Deputy Secretary, US Department of Interior
Honorable Gale A. Norton, Secretary

6

# EXHIBIT 11



**CHEROKEE NATION**
P.O. Box 948
Tahlequah, OK 74465-0948
918-456-0671

Chad "Corntassel" Smith
O*b*G?
Principal Chief

Hastings Shade
O*W*235h
Deputy Principal Chief

July 14, 2003

The Honorable Gale A. Norton
Secretary
U.S. Department of the Interior
1849 C St NW
Washington, DC 20240

The Honorable Stephen Griles
Deputy Secretary
U.S. Department of the Interior
1849 C St NW
Washington, DC 20240

The Honorable Aurene Martin
Acting Assistant Secretary – Indian Affairs
1849 C St NW
Washington, DC 20240

Re:    Urgent Request to discuss the Constitution of the Cherokee Nation and the
Recognition of recent Cherokee Nation elections

Dear Secretary Norton, Deputy Secretary Griles, and Acting Assistant Secretary Martin:

I write to request your personal attention to a matter of great concern and highest priority to the
Cherokee Nation, and request an immediate conference to discuss this matter directly with you,
without lawyers, later this week or early next. The purpose of this meeting will be to attempt to
resolve this matter before it escalates and results in costly and unnecessary litigation.

I have organized a small delegation from the Cherokee Nation to travel to Washington to meet
with you. The delegation will consist of former Principal Chief Wilma Mankiller, Secretary-
Treasurer Jay Hanna, Director of Government Resources Pat Ragsdale, a Tribal Council
Member, and me. I wish to discuss the pending approval of the Cherokee Nation's constitutional
amendment that former Assistant Secretary – Indian Affairs Neal McCaleb addressed and other
matters involving the *Seminole v. Norton (2001)* case as that decision may apply to the Cherokee
Nation.

In the spirit of the government-to-government relationship, I respectfully request that this
conference be between the leaders of the Department and the Cherokee Nation and not our
attorneys. If this matter is to be resolved quickly, it will rely upon our collective leadership and
desire to avoid litigation and public controversy. I cannot emphasize enough that time is of the
essence – the Cherokee people are to vote on a new constitution and two run-off seats on July 26.

FILED
AUG 11 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 12

AUG-11-2003  13:40                                                      P.34
Jul 15 2003 3:03PM  Hembree & Hembree        918-696-6688             P.2

# HEMBREE
# & HEMBREE

## Attorneys at Law

*Todd Hembree*
*Jerline Lawlor Hembree*

77 N. 2nd. Street
P.O. Box 1353
Stilwell, OK 74960

Monday, July 14, 2003

Pat Ragsdale
Cherokee Nation
P.O. Box 948
Tahlequah, Oklahoma 74464

Re:   Certification of Vote on the Amendment to the Cherokee Nation
      Constitution of 5- -03

Dear Mr. Ragsdale,

It is come to the attention of my clients that the Bureau of Indian Affairs is taking issue with the education process of the Cherokee people concerning the vote to approve an Amendment striking Article 15 Section 10. As you are aware, the initiating body concerning this proposed Amendment is the Cherokee Nation Tribal Council. It is by their Resolution in accordance with Article 15 Section 2 of the Cherokee Constitution that this matter is brought before the Cherokee people. In that regard, the Tribal Council is formally requesting that representatives be present and be in involved in any and all discussions, writings or any form of communication that the Cherokee Nation has with any official or employee with the Bureau of Indian Affairs. If any such written communication has already transpired, the council wishes to have a copy of that made available to them immediately. If any oral discussions have been made, the Tribal Council is requesting that a synopsis of both conversations be reduced to writing and forwarded to the Tribal Council. Obviously, this is a matter of utmost importance to the Cherokee people and to the Cherokee Nation Tribal Council. Your cooperation in this matter is greatly appreciated. If you have any questions concerning this, please do not hesitate to contact me at any time. I look forward to hearing from you.

Sincerely,

Todd Hembree

Cc:   BIA- Muskogee Area Office

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ph: (918) 696-5050                  E-mail: hembreelaw@aol.com
Fax: (918) 696-6688                 TOLL FREE: 877-220-5050

# EXHIBIT 13

AUG-11-2003  13:41                                                                                                P.35

JUL-18-2003 05:25P FROM:GOVERNMENT RESOURCES 918 458 7633          TO:19187814684          P:2



# CHEROKEE NATION
P.O. Box 948
Tahlequah, OK 74465-0948
918-456-0671

Chad "Cornsassel" Smith
G-h-G2
Principal Chief

Hastings Shade
O-W-Suh
Deputy Principal Chief

July 18, 2003

The Honorable J. Steven Griles
Deputy Secretary
U. S. Department of the Interior
1849 C Street N.W.
Washington, D. C. 20240

Re:    Cherokee Nation Constitutional Amendments

Dear Deputy Secretary Griles:

Thank you for taking the time yesterday to visit with me over matters pertaining to the Cherokee
Nation's 2003 elections, including the adoption and pending adoption of various constitutional
amendments to the Cherokee Nation's 1976 Constitution.

As you requested, our attorneys have furnished a letter to Mr. Scott Keep of the Associate
Solicitor's Office explaining that nothing in the pending Constitutional Amendments will
substantively alter in any manner whatsoever existing rules under the 1976 Constitution governing
citizenship in the Cherokee Nation. Our situation thus could not be more unlike the situation
presented in the *Seminole Nation* case you mentioned, a case where the Seminole Nation plainly
sought to expressly alter the citizenship rights of the Seminole Freedmen.

I appreciate yesterday's confirmation that the Department will shortly issue a letter recognizing
the results of the Cherokee Nation 2003 election for Principal Chief. Based upon the enclosed
letter from our attorneys, we also look forward to your Department's prompt approval of the
constitutional amendment adopted by the Cherokee Nation voters on May 24, 2003, consistent
with former Assistant Secretary Neal McCaleb's April 23, 2002, confirmation that the
Department has "no objection to the referendum" and is "prepared to approve the amendment
deleting the requirement for Federal approval of future amendments." If you foresee any further
problem in this regard, I specially request that you contact me immediately so that we may discuss
this matter further.

Sincerely,

Chad Smith
Principal Chief

FILED
AUG 1 1 2003
NANCY MAYER-WHITTINGTON CLERK
U.S. DISTRICT COURT

# EXHIBIT 14

AUG-11-2003  13:41                                                              P.37
JUL-18-2003 05:25P FROM:GOVERNMENT RESOURCES 918 458 7633        TO:19187814584        P:3

LAW OFFICES

SONOSKY, CHAMBERS, SACHSE
ENDRESON & PERRY, LLP
1425 K STREET, N.W., SUITE 600
WASHINGTON, DC 20005
(202) 682-0240
FACSIMILE (FAX) 682-0249

MARTIN J. SONOSKY (1909-1997)          July 18, 2003              NICOLE D. HERLER (AK)
HARRY R. SACHSE                                                  JAMES T. MEGGESTO
REID PEYTON CHAMBERS                   VIA FACSIMILE: (202)208-3490 and   ANDREINA Y. OKUMA-JACOBS
WILLIAM R. PERRY                                                 MANICHA K. FLANNERY (AK)
LLOYD BENTON MILLER (AK)               OVERNIGHT MAIL            MELANIE B. OSBORNE (AK)
DOUGLAS B.L. ENDRESON                                            MICHAELYN STEELE
DONALD J. SIMON
MYRA M. MUNSON (AK)                                              OF COUNSEL
ANNE D. NOTO                                                     ARTHUR LAZARUS, JR. P.C.
MARY J. PAVEL                                                    ROGER W. DUBROCK (AK)
DAVID C. MIELKE                                                  KAY E. MAASSEN GOUWENS (AK)
JAMES E. GLATT                                                   MATTHEW S. JAFFE
GARY F. BROWNELL (NM)                                            MARTA KOLLMAN
COLBY C. HAMPTON                                                 DOUGLAS W. WOLF (NM)
                                                                R. SCOTT TAYLOR

                                                                *NOT ADMITTED IN D.C.

Scott Keep, Esq.
Office of the Associate Solicitor
  for Indian Affairs
U.S. Department of the Interior
1849 C Street, NW, MS 6456
Washington, D.C.  20240

                    Re:   Cherokee Nation Constitutional Amendment

Dear Scott:

        I write at the request of Cherokee Nation Principal Chief Chad Smith in follow up
to Chief Smith's July 17, 2003, telephonic conversation with you, Deputy Secretary Griles and
Assistant Secretary Martin.  We understand that in yesterday's telephonic meeting Deputy
Secretary Griles requested that the Cherokee Nation's attorneys explain in writing how the
Constitutional Amendments to be voted upon in the upcoming July 26, 2003 election will not
alter citizenship or voting rights in the Cherokee Nation, and thus do not implicate the issues
addressed in *Seminole Nation of Oklahoma v. Norton*, No. 00-2384 (Slip. Op. Sept. 27, 2001)
(mem. op. on cross-motions for summary judgment).[1]

_____

[1]  In doing so, however, we note that these Amendments have not yet even been adopted,
and that they are also not pending before the Department.  Rather, the only Amendment that has
been adopted and is awaiting the Department's approval is the Amendment removing the 1976
Constitution's Secretarial approval requirement (Art. XV, Sec. 10).  Issues pertaining to other
Amendments, not yet placed before the voters, would thus appear to be premature.

FILED
AUG 1 1 2003
NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

Scott Keep, Esq.
July 18, 2003
Page 2

We begin by summarizing that nothing in the proposed Constitutional Amendments to be presented to the Cherokee Nation electorate next week effects any substantive change in the Cherokee Nation's existing constitutional citizenship requirements.  This is because both the existing 1976 Constitution and the proposed Amendments base Cherokee membership on the "Dawes Commission Rolls."

Specifically, Article III, Section 1 of the 1976 Constitution provides as follows:

All members of the Cherokee Nation must be citizens as proven by reference to the Dawes Commission Rolls, including the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th of May, 1867, and the Shawnee Cherokees as of Article III of the Shawnee Agreement dated the 9th day of June, 1869, and/or their descendants.

The proposed Constitutional Amendment to this Section to be considered next week, reorganized as Article IV, Section 1, would change the word "members" to "citizens" and improve upon the grammar of the sentence, but otherwise contains no substantive change:

All citizens of the Cherokee Nation must be original enrollees or descendants of original enrollees listed on the Dawes Commission Rolls, including the Delaware Cherokees of Article II of the Delaware Agreement dated the 8th day of May, 1867, and the Shawnee Cherokees of Article III of the Shawnee Agreement dated the 9th day of June, 1869, and/or their descendants.

The proposed Constitutional Amendment to be considered next week goes on to add the following additional paragraph in Section 1, recognizing the "basic rights" of the Cherokee Nation people:

The Cherokee Nation recognizes the basic rights retained by all distinct People and groups affiliated with the Cherokee Nation, retained from time immemorial, to remain a separate and distinct People.  Nothing in this Constitution shall be construed to prohibit the Cherokee-Shawnee or Delaware-Cherokee from pursuing their inherent right to govern themselves, provided that it does not diminish the boundaries or jurisdiction of the Cherokee Nation or conflict with Cherokee law.

Scott Keep, Esq.
July 18, 2003
Page 3

No provision of the existing 1976 Cherokee Constitution speaks to voter qualifications, and likewise no provision of the proposed Constitutional Amendments to be considered next week addresses voter qualifications.

Even if next week's Amendments were adopted and were thereafter subject to Secretarial approval, the situation presented could still not be more unlike the situation that was presented in *Seminole Nation*. In the Cherokee situation, the Constitutional Amendments propose no change whatsoever in citizenship or voting rights. In contrast, in the *Seminole Nation* case, the pending sixth constitutional amendment proposed "to require one-eighth quantum of Seminole Indian blood to be a member of the Seminole Nation, subject to two exceptions." Under the seventh amendment, the Seminole constitutional amendment proposed in the alternative that "'the term 'Seminole citizen' be changed to 'Seminole Indian citizen by blood.'" The eighth amendment would have provided that "all Council members representing Indian Bands must have at least one-quarter Seminole Indian blood by removing the exception to this requirement for Freedman Council members." Slip Op. 4-5 n.2. In partly sustaining the Department's disapproval of the amendments, the district court centrally relied upon the fact that the pertinent Seminole amendments sought to "remove the Freedman from membership in the Nation." *Id* at 18 (describing the amendments). Again, in contrast to the situation presented in *Seminole Nation*, the proposed Cherokee Nation Constitutional Amendments to be considered next week do not purport to disenfranchise any citizen in any manner whatsoever.

We trust that this clarification helps to assure the Department that the present situation is entirely different than the situation presented in *Seminole*. Moreover, as pointed out in footnote, the only Constitutional Amendment awaiting Secretarial approval is the amendment to Article XV, Sec. 10, which does not address citizenship issues at all. Secretarial approval of that amendment will thus in no way implicate the *Seminole* decision, and will be fully consistent with that decision.

Before closing, we pause to note that the recent complaints of certain Freedmen do not appear to contest in any manner existing Article III, Section I, nor to contest the non-substantive revisions to that section now pending before the Nation. Thus, the Freedmen's complaints are properly aired, not in connection with those Amendments, but in other fora, including the courts of the Cherokee Nation. So too, the Freedmen's complaints about the Bureau's decisions not to issue certificates of degree of Indian blood to certain Freedmen are properly raised within the Bureau's appellate processes for contesting such matters.

AUG-11-2003  13:43                                                          P.40

JUL-18-2003 05:08P FROM:GOVERNMENT RESOURCES 918 458 7633        TO:15187814604        P:6

Scott Keep, Esq.
July 18, 2003
Page 4

        Please feel free to call upon either of us for additional information regarding this
matter.

                    Sincerely,

                    SONOSKY, CHAMBERS, SACHSE,
                      ENDRESON & PERRY, LLP

        By:   Lloyd Benton Miller
             Arthur Lazarus, Jr.

LBM:alm
cc: Hon. Chad Smith, Principal Chief

# EXHIBIT 15

AUG-11-2003  13:44                                                          P.42



# COUNCIL OF THE CHEROKEE NATION

P. O. Box 948
Tahlequah, OK  74465-0948
1-800-995-9465
(918) 456-0671, Extension 2424

**Tribal Council**

John A. Ketcher
Don Crittenden
Ralph Keen, Jr.
Jackie Bob Martin
Mary Flute-Cooksey
David W. Thornton, Sr.
Don Garvin
Barbara Starr-Scott
Melvina Shotpouch
Stephanie Shepherd
John F. Keener
Harold DeMoss
Buel Anglen
Nick Lay
Charles "Chuck" Hoskin

July 18, 2003

Washington D. C. Visit
Aurene Martin, USDOI
Senator James Inhofe
Congressman Brad Carson

Hastings Shade, Deputy Chief Cherokee Nation
Mary Cooksey,  Cherokee Nation Tribal Council
Stephanie Wickliffe-Shepherd, Cherokee Nation Tribal Council

We come today in our official capacity and as individual members of the Cherokee Nation.  Too many questions are still unanswered as to our inquiries and the request not to recognize the Election of May 24, 2003.

We respectfully ask the Department of the Interior and the Bureau of Indian Affairs to hear from all interested and concerned parties prior to making a decision on the Cherokee Election issue.

The most recent "special report" to the BIA on the education process of the Cherokee citizen was just delivered to the Cherokee Tribal Council this Tuesday, July 15, 2003. The Council was never notified of an inquiry from the BIA, our election commission, or the administration of the nation.  What is not detailed in the report from Mr. Pat Ragsdale is that there was no attempt to educate the Cherokee Freedman, that there was less than five citizens at the majority of the educational forums, and that no forums were conducted in the Cherokee language.  The Tribal Council has been selectively excluded from communication concerning the election to and from the BIA and Cherokee administration.

We are taking a stand to fight the restraint of enormous political influence in which Chief Chad Smith and previous chiefs of the Cherokee Nation enjoy as they want to expedite the recognition of this election without the due process of the law and it recognition of all its citizens.

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

For the first time in our current history of modern day elections the Cherokee people have had a close up look view via our JAT appeal to hear the numerous election irregularities and violations of Cherokee Law. However, the only party, which was not allowed to testify and therefore bring even further light on the election, was the election precinct workers. The JAT did not allow their testimony.

We also ask for clarification if there has been violations of the Gov. Act of 1970, where our election laws are the procedures established by the Cherokee Nation and in establishing such procedures, did the Secretary of the Interior ever approve them? When were they submitted and when were they approved?

Now comes the Cherokee Freedman Issue that has yet to be answered. Merilyn Vann, president of the Oklahoma Freedman Association has stated, "we have common interest to work together and get answers on this election". As of date neither herself nor their attorney, John Bealy has received replies from the BIA or the Cherokee Nation on inquiries made immediately after the election. They are still waiting to hear more than just a form letter that they cannot vote from the Cherokee Election Commission.

Ms. Vann respectfully asks that we represent her voice and rights as a Cherokee Freedman in our requests and visits made here to the DOI and BIA today, July 18, 2003.

In closing, our government and constitution is an instrument of the people. But we are battling the restraint of high-level officials and resources. We take seriously the responsibilities of our oath of office. We ask that the DOI and BIA take serious the element of oppressive action on the Nation's part against it's own minority members and it's resident members within the historical boundaries of the Cherokee Nation.

We ask that the Secretary of the Interior protect not only the rights of the tribe, but also the rights of individual members. Not doing so is an infringement by non-members and members of our own tribe.

Sincerely,

Stephanie Wickliffe Shepherd

Mary Flute-Cooksey

AUG-11-2003   13:45                                                    P.44

Cherokee Election 2003
Voter Analysis

## Principal Chief

24-May-03

|  | | Votes Cast | | Percentage of Votes |
| Candidate | Absentee | Districts | Total | from Eligible Voters over 18 |
| --- | --- | --- | --- | --- |
| Smith | 3653 | 3628 | 7281 | 3.81% |
| Byrd | 1624 | 3825 | 5449 | 2.85% |
| Fields | 344 | 625 | 969 | 0.51% |
| Mayes | 121 | 94 | 215 | 0.11% |
| Total Votes | 5742 | 8172 | 13914 | 7.28% |

## Deputy Chief

|  | Votes Cast | | | |
| Candidate | Absentee | Districts | Total | |
| --- | --- | --- | --- | --- |
| Chapman | 1488 | 3044 | 4532 | 2.37% |
| Shade | 1083 | 3250 | 4333 | 1.70% |
| Grayson, Jr. | 2759 | 2434 | 5193 | 2.72% |
| Cornsilk | 363 | 389 | 752 | 0.39% |
|  | 5693 | 10200 | 13727 | 7.19% |

| Constitutional Amendment |  | 11214 | 5.87% |
| --- | --- | --- | --- |

| Current Registration Numbers Obtain 7/23/03 | | |
| --- | --- | --- |
| Total Tribal Membership | 239514 | |
| Over age 18 | 191032 | 79.76% |
| Membership residing in historical boundaries | 117884 | 49.37% * |
| Membership outside historical boundaries | 121630 | 50.94% * |

It's estimated there are only 26,000 membership registered to vote. The election laws surpress members from voting.
The Secretary of the Interior has failed by not approving our election procedures for ghastly small percent
of our membership to elect our leaders and pass a constitution amendment by only 5.87% of it's adult members.

* only an estimate if using the same percentage of members over 18 applied to residents in and out of boundaries.

C:\My Documents\Cherokee_votinganalysis

# EXHIBIT 16

07/28/2003 13:27 FAX 918 669 7736        THE SOLICITOR
200☒ [4589 ON XH/XLI]  LT:IT NOW 2003/82/L0



# United States Department of the Interior

### BUREAU OF INDIAN AFFAIRS
Eastern Oklahoma Regional Office
Post Office Box 8002
Muskogee, Oklahoma  74401

Office of the Regional Director                    July 25, 2003

Honorable Chadwick Smith
Principal Chief, Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 74465-0948

   Re:  Election of Officers and Constitutional Amendment

Dear Chief Smith:

This is in reply to your letter of July 14, 2003, which responded to the Region's letter of July 11, 2003. Following the July 17, 2003 teleconference, this office discussed these issues with the Acting Assistant Secretary - Indian Affairs and the Solicitor's Office, and is now providing the Cherokee Nation with additional information and clarification regarding the Department's position on the May 24, 2003 election.

As indicated in the July 11 correspondence, there is no express requirement in Federal law that the Department of the Interior certify the results of a Tribal election for Tribal officials, including the election of Principal Chief.  The Act of October 22, 1970 (84 Stat. 1091) (commonly referred to as the "Principal Chiefs Act"), provides, however, that the procedures for selecting the Principal Chief of the Cherokee Nation are subject to approval by the Secretary of the Interior.  We are aware of no evidence that the Secretary has approved the current procedures for the election of the Principal Chief.

The obligation to approve the procedures for selecting the Principal Chief is a different matter than certifying the actual selection of the Chief or any other officer. It is for the Tribe in the first instance to resolve internal disputes over election procedures and results. See *Wheeler v. Department of the Interior*, 811 F.2d 549 (10th Cir. 1987). There are only limited circumstances which would justify the Department's involvement in Tribal matters. *Id.* at 551-52. The Principal Chiefs Act establishes one such circumstance.  Accordingly, in order to preserve the Government-to-Government relationship and avoid undue interference in Tribal matters, the Department will continue to recognize you as Principal Chief pending a fully informed agency decision regarding the Cherokee election laws and procedures pursuant to the Congressional mandate in the 1970 Act.

The July 11 letter also addressed the question of the referendum on the amendment to the Tribal constitution. Former Assistant Secretary McCaleb had stated his willingness to approve an amendment that would remove the requirement for Secretarial approval of future amendments, if the vote on that amendment was properly conducted. The proposed amendment that would remove the

200'd  ҺЄ9:II 80/8Z/Ζ0        986Ζ-Ζ89 8I6                          ҺI

requirement for Secretarial approval of future amendments or a new constitution has not been approved and is therefore not yet effective.

This situation appears identical to the one involving the Seminole Nation of Oklahoma in which the Federal District Courts upheld the Department's position that the requirement on the face of the Tribal Constitution that amendments be approved could not itself be removed without Secretarial approval. *See Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1 (D.D.C. 2001) (CKK) ("*Seminole I*") and *Seminole Nation of Oklahoma v. Norton*, 223 F. Supp. 2d 122 (D.D.C. 2002)("*Seminole II*"). It is understood that the Nation takes a different view of the Seminole cases and that the Nation's attorneys have corresponded with the Solicitor's Office directly on those issues. The attorneys representing the Cherokee Freedmen have also corresponded with the Solicitor's Office regarding those issues. A copy of that letter is attached. If the Cherokee Nation would like to respond to the letter from the Freedmen attorneys or would like to share with the Department any discussion regarding the possible effects of the *Seminole I & II* decisions on the May 24, 2003 election, please forward that information to the Solicitor's Office.

It is hoped that this has clarified the Department's positions with regard to the May 24 election. In the interim, this office will continue its review of the material provided by Mr. Pat Ragsdale on July 11, 2003.  If there are any questions, please contact this office.

Respectfully,

Regional Director

# EXHIBIT 17

August 5, 2003

RE: Cherokee Election: Principal Chief and Cherokee Freedman

FAX DELIVERY

Honorable Ms. Aurene Martin
Interim Assisted Secretary, U.S.D.O.I.
1849 C. Northwest
Washington D.C. 20240

Dear Honorable Ms. Aurene Martin,

As interested members of the Cherokee Nation and as elected officials we issue this demand letter to raise very serious legal issues and request specific action of the Bureau of Indian Affairs regarding the election of our principal chief, the constitutional amendment, and the voting rights of the Cherokee Freedman.

At the core of this matter is the violation of the Principal Chiefs Act of 1970. As stated by the BIA, in correspondence we received through the Freedom of Information Act, the procedures for election of the Principal Chief has never been approved by the Secretary. If the Department chooses to approve these procedures at this time, they will be approving an unconstitutional act which discriminates Cherokee Freedman from voting by containing the words "by blood". Chad Smith was not lawfully elected as chief on May 24, 2003 because Cherokee Freedman were not allowed to vote or file for office if they were not Cherokee by blood, yet the Shawnee and Delaware members are allowed to vote by law.

Had the Secretary approved the election procedures we could possibly have election laws that do not foster low voter eligibility, but foster at least a 30% participation of entitled members to vote. Chad Smith was elected by only 3.81% of our members entitled to vote. Registration numbers obtain 7/23/03 from our registration department show 191,032 citizens over age 18, which are entitled to vote. The constitutional amendment passed by only 11,214 citizens casting a vote which is a devastating low percent of 5.87%. With an annual budget of $336 million the trust responsibility is so enormous that lawfully elected officials should be recognized for the protection of the Cherokee people.

We are prepared to take breach of trust action, voting rights action, and administrative procedures claim because the Freedman and Cherokee citizens have been denied their right and opportunity to participate in our government. An injunction will be filed today and a press conference is scheduled to follow.

We request the Department recognize the hold-over officials, chief, deputy, and council (as it did in the Seminole case) until the Freedman have their rights to vote restored and a new election is called. We request the Department appoint a trustee for the Freedman as it did in 1902 to ensure their civil rights. We request the Department immediately issue a letter not recognizing the amendment to remove federal approval from our constitution. If the Department recognizes a new tribal government, then you have recognized an unlawful election and disenfranchised the freedman and the citizens of the Cherokee Nation.

Sincerely,

*Hastings Shade*
*Stephanie Wickliffe - Shepherd*

Hastings Shade, Deputy Chief Cherokee Nation
Stephanie Wickliffe-Shepherd, Tribal Council Cherokee Nation

cc:  Honorable Gayle Norton
     Scott Keep, Esq.
     U.S. Senate Committee on Indian Affairs

FILED
AUG 1 1 2003
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 18

[08/06/03   WED 16:41   [TX/RX NO 9282]

Tribal Operations

AUG   6 2003

Honorable Chadwick Smith
Principal Chief, Cherokee Nation
P. O. Box 948
Tahlequah, Oklahoma 74465-0948

Dear Chief Smith,

This letter further clarifies the Department of the Interior's position with regard to the Cherokee
Nation of Oklahoma election for Principal Chief of May 24, 2003.

As previously discussed, there is no express requirement in Federal law that the Department is
required to certify the Tribal election results.  In this regard, the Department is not certifying the
election results of Tribal officials.

The Department has reviewed the correspondence from the Nation's counsel and the counsel for
individuals asserting that they are Cherokee Freedman denied the right to vote in the May 24 Tribal
election.  The Department's role in this area is controlled by the decision of the Tenth Circuit Court
of Appeals in *Wheeler v. Department of the Interior*, 811 F.2d 549 (10th Cir. 1987).  In that case the
Circuit Court noted:

> [T]he Department takes the position that, when the tribe provides a means for
> challenging elections, the Department has no authority to overrule the decision of the
> tribal government as to whether a candidate is legally elected.  Plaintiffs admit that
> no Cherokee law or federal statute requires the Department to act in the present case.

*Id.* at 552.

The Court went on to conclude:

> Any election dispute can be resolved by Cherokee tribal forums, without any
> Department involvement.  Once the Cherokee Tribal Election Board certifies an
> election result, the Department can carry out its statutory obligation to interact with
> the legal government, and does not need to reexamine the results of the tribal
> election.

*Id.*

In view of the holding in *Wheeler*, it is inappropriate and premature for the Department to question the validity of the election of Tribal officials.

Based on the Nation's Election Commission certification of the results of the May 24 election, the Department recognizes you as the Principal Chief of the Nation.

The Department continues to have under review the May 24 Tribal election results on the proposed amendment of the Tribal constitution that would remove the requirement that future amendments be approved by the Secretary of the Interior. This review is on-going.

Respectfully,

(sg-) Jeanette Hanna

Regional Director

cc:

Lloyd B. Miller, Esq.
Sonosky, Chambers, Sachse, Miller & Munson
900 West 5th Avenue - Suite 700
Anchorage, Alaska 99501

Jon T. Velie, Esq.
210 East Main Street
Suite 222
Norman, Oklahoma 73069

Acting Assistant Secretary - Indian Affairs
Main Interior Building
1849 C Street, N.W.
Washington, D.C. 20240

Assistant Solicitor
Division of Indian Affairs, Room 6449
U. S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

SKEEP:AMARTIN:JHANNA:08-06-03
file - Cherokee Nation Election 2003
chrony, mailroom, EORD

# EXHIBIT 19

# VELIE & VELIE ATTORNEYS AT LAW

210 East Main Street, Suite 222
Norman, Oklahoma 73069
www.onlinevisas.com

Jonathan T. Velie
William Velie
Tanya L. Roland

Telephone:    (405) 364-2525
Facsimile:     (405) 364-2587
Toll Free:     (877) 304-2525
Email:    info@velieandvelie.com

June 10, 2003

Ms. Aurene Martin
Acting Assistant Secretary of Indian Affairs
1849 C Northwest
Washington, D.C. 20240
Mail Stop 4140
Main Interior Building
Via Mail and Facsimile: 202-208-5320

Re: Cherokee Freedmen membership in Cherokee Nation of Oklahoma

Dear Ms. Martin:

This firm represents Marilyn Vann, Ronald Moon, Donald Moon and Hattie Cullors. These individuals are direct descendants of individuals on the Cherokee Freedmen Dawes Rolls. Cherokee Freedmen are Cherokees of African Descent that were recognized by the Cherokee Nation and the United States as full members of the Cherokee Nation under the Treaty of 1866.

The Seminole Cases decided by Judge Kotar-Kotelly and Judge Walton in Washington D.C. determined that the Treaty of 1866 between the Seminole Nation and the United States protected the membership of the Seminole Freedmen. As the Kotar-Kotelly Court determined and the Walton Court confirmed the Seminole Treaty of 1866 is still valid, the Cherokee Treaty is as well. Therefore, the Cherokee Freedmen are entitled to membership in the Cherokee Nation. Membership includes voting rights and all other membership benefits afforded to other Cherokees.

However, the Cherokee Nation of Oklahoma has declined membership for these individuals. The denial of membership is made as a matter of policy for Cherokees who can trace only to the Cherokee Freedmen Rolls. As a result, Cherokee Freedmen were denied the right to vote in the election of May 24, 2003. Therefore, said election would be invalid as it preclude members of the nation from voting. Cherokee Freedmen are also denied the right to receive any benefits afforded to the other members of the Cherokee Nation.

These actions are violations of the Treaty and federal law and the individuals request that the Bureau of Indian Affairs perform its fiduciary duties to all Cherokees and enforce the membership rights including the right to vote in Cherokee Nation Elections for the Cherokees of African descent under the provisions of the Treaty of 1866.

The individuals request the Bureau of Indian Affairs take any and all actions to protect its right to membership in the Cherokee Nation including determining the May election invalid, requiring a new election that includes the Cherokee Freedmen's right to vote as well as inclusion in all other membership rights in the Cherokee Nation.

If there is any more information I may provide you so that you can adequately examine this issue please contact me.

Sincerely,

Jon Velie

Cc: Eastern Oklahoma Regional Director
P.O. Box 8002
Muskogee, OK 74401

FILED

AUG 1 1 2003

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# EXHIBIT 20

AUG-11-2003  13:49                                                                    P.55

# VELIE & VELIE ATTORNEYS AT LAW

210 East Main Street, Suite 222
Norman, Oklahoma 73069
www.onlinevisas.com

Jonathan T. Velie
William Velie
Tanya L. Roland

Telephone:      (405) 364-2525
Facsimile:      (405) 364-2587
Toll Free:      (877) 304-2525
Email:    info@velieandvelie.com

July 21, 2003

Mr. Scott Keep
Attorney for the Bureau of Indian Affairs
1849 C Northwest
Washington, D.C. 20240
Via Mail and Facsimile: 202-208-3490

Re: Certification and recognition of Cherokee Nation of Oklahoma election results in
light of Cherokee Freedmen inability to participate

Dear Mr. Keep:

This firm represents Marilyn Vann, Ronald Moon, Donald Moon and Hattie Cullors.
These individuals are direct descendants of individuals on the Cherokee Freedmen Dawes
Rolls. Cherokee Freedmen are Cherokees of African Descent that were recognized by the
Cherokee Nation and the United States as full members of the Cherokee Nation under the
Treaty of 1866.

I was advised by Ms. Aurene Martin that you and Charles Babst were the legal counsel
handling the issues surrounding the matter of certification of the Cherokee Nation of
Oklahoma election. As you may know, I wrote a letter to Ms. Martin addressing the issue
that the Cherokee Freedmen were not entitled to vote in the recent election. This action is
in direct violation of the Treaty of 1866 and the interpretation of a very similar treaty
with the Seminoles by Federal Judges Kotar-Kotelly and Walton in actions that we were
both involved in. I have attached a copy of that letter.

Ms. Martin advised me today that the individuals that desired the recognition of the
election based their position on Wheeler v. U.S. and invited us to draft our position on
that issue for your review.

Please excuse the abbreviated position statement. We understand that a decision on
certification may be determined at any time and an immediate statement from the
Cherokee Freedmen is neccessary. As we have not seen the brief of the parties seeking

certification, please accept this language as an aid to your determination regarding the Wheeler case and not a full brief on the position of the Cherokee Freedmen or a response to any party's position. We reserve the right to fully brief our position in the event litigation results.

Wheeler v. U.S. et. al. 811 F. 2d. 549 (1987) holds, "that Indian Tribes have a right to self-government, and the Federal Government encourages tribes to exercise that right. Consequently, while the Department may be required by statute or tribal law to act in intratribal matters, it should act so as to avoid any unnecessary interference with a tribe's right to self government."

While we agree that the Federal government should not unnecessarily interferes with a tribe's right to self-government, upholding the Treaty of 1866 granting the Cherokee Freedmen citizenship in the Cherokee Tribe is not merely unnecessary interference. Further, upholding the Freedmen's right to vote in tribal elections is the position the BIA took in the Seminole cases. These positions were supported by two Federal Judges and are directly on point with the Cherokee situation.

Another federal law that may require the involvement of the Department in the election is the Principal Chiefs Act of 1970, which states that certain procedures must be approved by the Department regarding elections. The Cherokee Nation never submitted the procedures disenfranchising the Cherokee Freedmen right to vote for Department approval, therefore, the Department never approved the procedures. The procedures disenfranchising the vote for the Cherokee citizens of African descent are in direct violation of the Treaty of 1866 and the recent Seminole cases.

I understand that the BIA may take the position that the election for Chief may be certified and recognized but not the election on the constitutional issue. These issues cannot and should not be distinguished. The election is fatally flawed because some citizens of the Cherokee Nation were not permitted to vote, therefore, no part of the election is proper. This is not merely an inter-tribal dispute but a direct violation of Treaty rights that protect the citizenship of the Cherokee of African descent.

The BIA must uphold its trust responsibilities to the Cherokee Nation, no matter what improper position the tribe takes. Seminole Nation v. United States, 316 U.S. 286, 297, 62 S. Ct. 1049, 1055 (1942) (Payment of funds to a faithless trustee would be a "clear breach of the Government's fiduciary obligation" and would be actionable); United States v. Mitchell, 643 U.S. 206, 224-28, 103 S. Ct. 2961, 2971-73 (1983) Failure of U.S. trust obligations gives rise to cause of action against trustee.

The Bureau of Indian Affairs has a fiduciary duty to protect Cherokee citizens against the Tribal Government's treaty violation in the same way the Bureau would have the fiduciary duty to protect the citizens against any other type of illegal act the Cherokee government performed against it's citizens. If the Chief or Council of the Tribe embezzled Federal Trust Funds the Bureau would not think twice about taking action. In this case, the stripping of a citizen's right to vote for who leads the Nation or whether the

constitution is altered is a theft of the most valued right a Cherokee citizen can possess. The Cherokee Nation's action has committed the highest form of impropriety it can undertake and stripped itself from being a democracy. Denial of the right to fair elections, the right to chose leaders and ratification of the treatise in which you are governed is a fundamental right all Cherokee enjoy and are of much higher value than misappropriation of funds. Yet the BIA takes pause on whether to take action.

The Cherokee Freedmen listed above respectfully request that the BIA uphold its fiduciary duty to protect their Federally protected right to citizenship in the Cherokee Nation of Oklahoma including their right to vote in elections. To uphold this right, the BIA must take the same course of action it did with the Seminole Nation and demand lawful elections that provide all citizens the right to participate.

If there is any more information I may provide you so that you can adequately examine this issue please contact me.

Sincerely,

Jon Velie

Cc: Mr. Charles Babst
BIA Field Solictor's Office
918-669-7736

Ms. Aurene Martin
Acting Secretary of Indian Affairs
202-208-6334

# EXHIBIT 21

*TChis*
*6/12/06*



**CHEROKEE NATION**©

P.O. Box 948 • Tahlequah, OK 74465-0948 • (918) 453-5000

ᎤᎬᎥᎢ
Chad "Corntassel" Smith
Principal Chief

ᏚᏈ ᎠᎸᎯ
Joe Grayson, Jr.
Deputy Principal Chief

June 9, 2006          <u>Via Fax and Mail</u>

James Cason
Acting Assistant Secretary of Indian Affairs,
Department of Interior
Bureau of Indian Affairs, Room 4160
1849 C Street, N.W.
Washington D.C. 20240

Fax (202) 208-1873

Dear Mr. Cason:

Please be advised that the Cherokee Nation is withdrawing its request for approval of the Cherokee Nation Constitutional Amendment which was approved by the Cherokee people on May 24, 2003.

We consider BIA approval to be a moot issue, pursuant to a ruling of the Cherokee Nation Supreme Court, JAT 05-04.  I am providing a copy for your information.

If I can advise any further as to this issue, please call.

Yours,

Chad Smith
Principal Chief

cs:lr

cc:  Council of the Cherokee Nation