UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN VANN, RONALD MOON, DONALD MOON, HATTIE CULLERS, CHARLENE WHITE and RALPH THREAT, <br><br> Plaintiffs, <br><br> vs. <br><br> DIRK KEMPTHORNE, Secretary of the United States Department of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR; CHEROKEE NATION; CHADWICK SMITH, Individually and in his Official Capacity; JOHN DOES, Individually and in their Official Capacities, <br><br> Defendants. | Case No. 1:03 cv 01711 (HHK) <br> Judge: Henry H. Kennedy <br> Docket Type: Civil Rights <br> (non employment) |

**DEFENDANT CHADWICK SMITH'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT**

Plaintiffs' Motion for Leave to File a Fifth Amended Complaint should be denied for multiple reasons. Initially, because the proposed Fifth Amended Complaint adds only new parties and no new claims for relief, the lack of private right of action on which to premise Plaintiffs' claims against Chief Smith, and by extension the Cherokee Nation, as explained in his Motion to Dismiss the Fourth Amended Complaint, renders the amendment futile. Additionally, even if Plaintiffs somehow could overcome that futility, Plaintiffs provide no precedent indicating that the forum immunity accorded sovereigns in *Pennhurst State Sch. v. Halderman*, 465 U.S. 89 (1984) and *Tegic Communications v. University of Texas System*, 458 F.3d 1335, 1342 (Fed. Cir. 2006), acknowledged in Plaintiffs' Memorandum at p. 5, is unavailable in this context of separate actions in separate courts. Finally, the Plaintiffs offer no authority holding that a sovereign's filing of an action when not a party in another forum constitutes a waiver of

forum immunity by litigation conduct.  Chief Smith's previously-filed Motion to Dismiss should be granted and the Motion for Leave to Amend should be denied.

## RELEVANT FACTS

1. On August 11, 2003, Plaintiffs filed an action against the Secretary of the Interior and the Department of the Interior seeking a judgment declaring that the U.S. government may not approve any election or other act by the Cherokee Nation in derogation of the rights of "Freedmen Citizens," enjoining the Defendant from recognizing the result of the May 24, 2003 Cherokee election, directing the BIA to recognize hold-over officials until a lawful election is held and directing the BIA to appoint a trustee to ensure the civil rights of the "Freedmen" are not violated further. (Dkt. #1)

2. On January 14, 2005, the Cherokee Nation intervened for the sole purpose of obtaining dismissal of the action because of the Nation's absence due to sovereign immunity. (Dkt. #17)

3. On December 19, 2006, the Plaintiffs filed a second amended complaint adding as Defendants the Cherokee Nation, its Principal Chief Chadwick Smith and certain unidentified Doe Defendants ("the Cherokee Defendants") (Dkt. #42).  The claims against the Cherokee Defendants were premised on the Thirteenth Amendment to the U.S. Constitution, the Treaty of 1866 between the Cherokee Nation and the United States, the Indian Civil Rights Act,  25 U.S.C. § 1301 *et seq.*, the Principal Chiefs Act of 1970 and the Cherokee Constitution.

4. On December 19, 2006, this Court held that it had no jurisdiction of claim under the Indian Civil Rights Act or the Cherokee Constitution (Dkt. #41); *Vann v. Kempthorne,* 467 F.Supp.2d 56 (D.D.C. 2006).  Plaintiffs have acknowledged that the Principal Chiefs Act of 1970

does not provide a private right of action against the Cherokee Defendants. (See Pl's Memorandum in Opposition to Motion to Dismiss, p. 7, n.2, Dkt. #123.)

5. In its December 19, 2006 Opinion, this Court determined that the Cherokee Nation was a required party under Fed.R.Civ.P. 19(a), found that the Cherokee Defendants' sovereign immunity had been waived by the Thirteenth Amendment, that under *Ex Parte Young* Chief Smith could remain a Defendant, tribal sovereign immunity notwithstanding, and denied the Motion of the Cherokee Defendants to Dismiss on the ground of tribal sovereign immunity.

6. On July 29, 2008, the Court of Appeals for the D.C. Circuit reversed the District Court's decision as to the Cherokee Nation, dismissed the Cherokee Nation from the action, held that Chief Smith could remain a party pursuant to *Ex Parte Young*, sovereign immunity notwithstanding, and remanded the cause to the District court for a Rule 19(b) analysis. *Vann v, Kempthorne*, 534 F. 3d 741 (D.C. Cir. 2008).

7. On January 30, 2009, in response to Plaintiffs' Fourth Amended Complaint, Chief Smith filed a Motion to Dismiss, asserting that this action should be (a) dismissed without prejudice pursuant to Rule 19(b), (b) in the alternative dismissed with prejudice pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim because of the absence of a private right of action on which to base Plaintiffs' claims for relief and (c) in the further alternative, dismissed without prejudice pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue. (Dkt. #119)

8. The Federal Defendants joined in Chief Smith's arguments pursuant to Rule 19(b) and pursuant to Rule 12(b)(6) for lack of a private right of action as to the claims asserted jointly against Chief Smith and the Federal Defendants. (Dkt. #118)

9. On February 3, 2009, subsequent to its dismissal by the Court of Appeals, the Cherokee Nation instituted an action against certain individuals not a party to this action, the

Secretary of the Interior and the Department of the Interior in the United States District Court for the Northern District of Oklahoma, where all of those non-federal Defendants reside, seeking a declaratory judgment that certain federal statutes modified the Treaty of 1866, thereby resulting in non-Indian Freedman descendants, including the individual defendants, no longer, as a matter of federal law, having rights to citizenship of the Cherokee Nation and benefits derived from such citizenship (the "Northern District of Oklahoma Action").

10.     At the time the Northern District of Oklahoma Action was filed, the Cherokee Nation was not a party in any state or federal court in any litigation involving the 1866 Treaty or statutes affecting it.

11.     After the briefing had closed on March 14, 2009, the Plaintiffs sought leave to file a Fifth Amended Complaint adding here as Plaintiffs the non-federal Defendants in the Northern District of Oklahoma action and as a Defendant here the Cherokee Nation, previously dismissed by the Court of Appeals (Dkt. #127). Plaintiffs' Fifth Amended Complaint offers no new claims for relief and continues to base its claims for relief against the Cherokee Defendants on the Thirteenth Amendment and the 1866 Treaty, which the Federal Defendants and Chief Smith demonstrate in the pending Motions to Dismiss provide no private rights of action on which Plaintiffs may base their claims.

I.    **PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED AS FUTILE SINCE JOINING THE CHEROKEE NATION AS A PARTY CANNOT CURE PLAINTIFFS' FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

While it is true that leave to amend should be freely granted under most circumstances, it is also well settled that leave should be denied when amendment would be futile, *i.e.*, when the amendment would not cure fatal defects in the prior pleading. Plaintiffs' proposed amendment is futile because it still fails to state a claim. Rejoining the Cherokee Nation would not cure that

fatal flaw.[1]

It is well-settled that leave to amend a complaint should be denied when the amendment would be futile, *i.e.*, when the amendment would not cure the defects that require dismissing the prior complaint. *National Wrestling Coaches v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) ("[a] district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss."); *James Madison Ltd. V Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile, as the district court did here, if the proposed claim would not survive a motion to dismiss."). In *National Wrestling Coaches*, the Department of Education moved to dismiss on the grounds that plaintiffs lacked standing. The plaintiffs sought leave to amend to add the Secretary of Education and the Assistant Secretary for Civil Rights as defendants. The U.S. Court of Appeals for the D.C. Circuit affirmed the district court's denial of leave to amend on the grounds of futility because including the Secretary of Education and the Assistant Secretary for Civil Rights as defendants would add nothing to the appellants' assertion of standing and thus would not suffice to cure the defects in the plaintiffs' complaint. *Id*. at 936. Similarly, in this case, Plaintiffs' proposed amendment rejoining the Cherokee Nation will not cure the fatal flaw that requires dismissal under Fed.R.Civ.P. 12(b)(6).

Plaintiffs' proposed Fifth Amended Complaint, which would add the Cherokee Nation as a party defendant and some new alleged non-Indian Freedmen descendants as Plaintiffs, still fails to state a claim and would have no impact on Chief Smith's motion for dismissal under Fed.R.Civ.P. 12(b)(6). In reality, as Plaintiffs admit, the claims for relief against Chief Smith,

---

[1] Efficiency suggests determining the portion of Chief Smith's pending Motion to Dismiss for failure to state a claim because of the lack of a private right of action before addressing the

and now also against the Cherokee Nation, are premised on only two alleged sources of private rights of action, the Thirteenth Amendment to the Constitution and the 1866 Treaty.[2] As explained fully in the Memoranda supporting Chief Smith's Motion to Dismiss, there is no basis on which Plaintiffs can assert a private right of action under the Thirteenth Amendment to the U.S. Constitution or under the 1866 Treaty. This Court,[3] the D.C. Circuit, and every federal court that has addressed the question have held that there is no direct private right of action under the Thirteenth Amendment. As the D.C. Circuit stated in its unappealed opinion in this very case: "Nothing in Section 1 of the Thirteenth Amendment so much as hints at a federal court suit by a private party to enforce the prohibition against badges and incidents of slavery against Indian tribes." *Vann v. Kempthorne,* 534 F.3d 741, 748 (D.C. Cir. 2008)

Likewise, no court has recognized the right of action under the 1866 Treaty claimed by Plaintiffs here. Good reason exists for that absence of authority. Since treaties do not generally create judicially-enforceable rights, there is a presumption against such a right. Although the right of action should appear unambiguously in the Treaty, it does not do so here. *See Hanoch Tel-Oren v. Libyan Arab Republic*, 517 F. Supp. 542 (D.D.C. 1981), *aff'd*, 756 F. 2d 774 (D. C. Cir. 1984). U.S. Supreme Court precedent, the Treaty's language, and subsequent congressional

---

Motion for Leave to File Fifth Amended Complaint. If the Motion to Dismiss for failure to state a claim is granted, the Motion to Amend becomes, for all practical purposes, moot.

[2] Plaintiffs also allege three other bases for their claims for relief, all of which are not viable. Although Plaintiffs invoke the Principle Chiefs Act of 1970, Pub.L. 91-495, 84 Stat. 1091, they admit that they have no private right of action under it against the Cherokee Defendants. (See Pl's Memorandum, p. 7, n. 2, Dkt #123). Plaintiffs further assert claims under the Indian Civil Rights Act, 25 U.S.C. 1301 *et seq.* and the Cherokee Constitution. This Court has previously held that the claims under the ICRA or the Cherokee Constitution are not cognizable in federal court. *Vann v. Kempthorne,* 467 F.Supp.2d 56, 74 (D.D.C. 2006).

[3] *Richardson v. Loyola College T/A Facility*, No. 02-01597 (HHK) (D.D.C. Aug 14, 2003), Memorandum Opin. pp7-9, *aff'd* 167 Fed. Appx. 223, 2005 WL 3619423 (D.C. Cir. 2005) .

actions all contravene Plaintiffs' notion of a right of action. *See Ex Parte Mayfield*, 141 U.S. 107, 114-115 (1891); Art. VII and XIII of 1866 Treaty, 14 Stat. 799; Act of October 1, 1890, 26 Stat. 636 and the accompanying Senate Floor debate, CONG. REC., Vol 21, 10359 (1980) (quoted at Memorandum in Support of Defendant Chadwick Smith to Dismiss, pp. 25-26, Dkt. #120).

That clear precedent notwithstanding, Plaintiffs in their proposed Fifth Amended Complaint merely reassert claims premised on those two legally defective theories. No new claim for relief is alleged. Even if the proposed amendment were allowed, it would still fail to state a claim and have no effect on the analysis or outcome of Chief Smith's pending motion to dismiss for failure to state a claim upon which relief can be granted. Thus, Plaintiffs' Motion for Leave to File a Fifth Amended Complaint should be denied on the grounds of futility.

**II.    PLAINTIFFS' MOTION IMPLICITLY CONCEDES THAT THE ACTION CANNOT PROCEED IN THE ABSENCE OF THE CHEROKEE NATION.**

By attempting to join the Cherokee Nation, Plaintiffs have implicitly conceded that Chief Smith's pending Rule 19(b) Motion is correct. Chief Smith's Motion is premised on the fact that the case cannot proceed in the absence of the Cherokee Nation. In opposing that Motion to Dismiss under Rule 19(b), Plaintiffs have based their opposition on their allegation that the case can proceed in the absence of the Cherokee Nation. If the Nation is not needed, then why are Plaintiffs seeking to join it? If Plaintiffs' opposition to the Rule 19(b) motion is correct, then Plaintiffs have no reason to join the Cherokee Nation. Of course, the real impact of Plaintiffs' concession occurs upon the denial of leave to amend. If the joinder of the Cherokee Nation sought by the Plaintiffs is denied, Chief Smith's grounds for granting the pending Rule 19(b) Motion to Dismiss are further underscored by the Plaintiffs' attempts here.

### III. PLAINTIFFS' MOTION TO AMEND SHOULD BE DENIED BECAUSE THE CHEROKEE NATION HAS NOT WAIVED ITS SOVEREIGN FORUM IMMUNITY IN THIS ACTION.

#### A. Plaintiffs Do Not Deny That Tribal Sovereigns Enjoy Both Claims Immunity and Forum Immunity, as twice Pointed Out in Filings by Chief Smith.

U.S. Supreme Court teaching in *Pennhurst State Sch. v. Halderman*, 465 U.S. 89 (1984), and the reasoning of its progeny *Tegic Communications v. University of Texas System*, 458 F.3d 1335, 1342 (Fed. Cir. 2006), provide the starting point for analyzing Plaintiffs' claim of waiver of sovereign immunity. In *Pennhurst*, the Supreme Court distinguished between *claims* immunity and *forum* immunity, explaining that sovereign immunity includes both by stating that a sovereign's interest in immunity "encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99. After expressly acknowledging the forum-immunity aspect of sovereign immunity, and the *Pennhurst* decision, the *Tegic* court applied that forum immunity by holding that, although the University of Texas "obviously made itself a party to the litigation to the full extent required for its complete determination," by filing a suit in the Western District of Texas, the University "did not thereby voluntarily submit itself to a new action brought by a different party in a different state and a different district court." *Tegic,* 458 F.3d at 1342-1347.

From these decisions a clear rule emerges. A sovereign's right to control the forum in which it litigates is inherent in sovereign immunity and courts must uphold the exercise of that right. In other words, a sovereign may waive its forum immunity in one forum without waiving its immunity as to another forum. Even Plaintiffs themselves acknowledged *Pennhurst* and *Tegic*, stating that "they respect as well the principle that a sovereign may waive its immunity in one forum without waiving its immunity in another forum." (Pl's Memorandum, p.5).

### B. Plaintiffs Offer No Precedent on Analogous Facts That the Cherokee Nation Has Waived Its Forum Immunity Here.

Initially, Plaintiffs offer no case holding that a sovereign's waiver of forum immunity as to one forum constitutes a waiver of form immunity as to another action in another forum to which the sovereign is not a party. The absence of such authority confirms that the attempt to amend by joining the Cherokee Nation is without foundation in law, is futile, and should be denied.

The significance of Plaintiffs' lack of authority finding a waiver of forum immunity is surpassed by the very decisions that Plaintiffs do advance. All of Plaintiffs' cases either contradict, or explicitly reject, Plaintiffs' position. For example, *Biomedical Patent Management Corp. v. California Dep't. of Health Services*, 505 F.3d 1328 (Fed. Cir. 2007), holds explicitly that waiver of immunity by a sovereign in one case does not extend to a separate case, even if those cases involve the same subject matter and the same parties. However, *BPMC's* damage to the Plaintiffs' Motion to Amend does not stop with that holding. Rather, *BPMC* expressly distinguishes virtually all of the waiver cases cited by Plaintiffs and explicitly rejects the two losing arguments that Plaintiffs urge here.

### 1. None of Plaintiffs' Decisions Hold That the Filing of an Action in One Forum Constitutes Waiver of Forum Immunity in Another Forum "With Regard to the Subject Matter of the Case."

First, Plaintiffs argue that, by filing an action in the Northern District of Oklahoma, the Cherokee Nation should be deemed to have waived its immunity "with regard to the subject matter of this case." (Pl's Memorandum, p. 6; Dkt. #127-2).

As to that argument, Plaintiffs here attempt to make the same specious argument made by the *BPMC* plaintiffs, conflating the "subject matter of an action" with the action itself. Plaintiffs argue, without relying directly on *Lapides v. Bd. of Regents of the Univ. Sys. Of Georgia,* 535

U.S. 613 (2002), or any other case law, that, by filing a suit in federal court, the Cherokee Nation has "waived its right to assert immunity with regard to the subject matter of this case." (Pl.'s Memorandum, p. 6.) Plaintiffs are wrong, as the *BPMC* court's rejection of this exact argument (and the *BPMC* plaintiffs' reading of *Lapides* in support of it) confirms. The *BPMC* court explained that the U.S. Supreme Court's use of the word "matter" in *Lapides* signified the "case at hand" and not, as plaintiffs contended, the lawsuit's subject matter. Thus, Plaintiffs' first argument has already been examined and soundly rejected by Plaintiffs' own authority.

A reading of other cases relied on by Plaintiffs reveals that waiver was found only in the same case, rather than the expansive "with regard to the subject matter of the case" urged by Plaintiffs. *Lapides v. Bd. Of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613 (2002), holds that a state's act of removing a lawsuit from state to federal court waives the state's immunity "in the case at hand."[4] Likewise, *Meyers v. Texas*, 410 F.3d 236 (5th Cir. 2005), holds that a state's act of removing a lawsuit from state to federal court waives the state's immunity "in the same case." *Id*. at 249.[5] *Vas-Cath, Inc. v. Curators of the Univ. of Missouri*, 473 F.3d 1376 (Fed. Cir. 2007), holds that a state's filing of an interference action with the Patent and Trademark Office waives the state's immunity in an appeal of the Patent and Trademark Office ruling. As the *Vas-Cath* court explained, an appeal is "not a new claim, but an authorized phase" of an ongoing proceeding. *Id*. at 1382.

---

[4] Specifically, the Supreme Court states,

> It would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends *to the case at hand*, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to *the case at hand*.

*Lapides*, 535 U.S. at 619 (emphasis added).

[5] The *Meyers* court held that the state "acted inconsistently by both invoking federal jurisdiction and claiming immunity in the same case." *Id.* at 249

Finally, in *New Hampshire v. Ramsey*, 366 F.3d 1 (1st Cir. 2004), like the other cases cited by Plaintiffs, "the waiver was found in the *same* proceeding, not a separate action." *BPMC* at 1337. In distinguishing *Ramsey* on the same grounds it had on all of the other cases relied upon by Plaintiffs, the *BPMC* court was quite clear in insisting on waiver occurring in the same proceeding to be effective:

> *Ramsey*, therefore, is a relatively straightforward application of *Lapides* that does not support BPMC's position in this case. In *Ramsey*, the State's initial waiver of immunity in the first suit, which was dismissed for failure to exhaust administrative remedies, had very little to do with the court's ultimate conclusion that the State waived its immunity when it invoked the statutorily-provided administrative remedies. *Id.* ("This case goes well beyond a simple matter of failure to raise an immunity argument in earlier proceedings."). Instead, it was the voluntary invocation of an administrative process that provided for federal judicial review that was the critical act amounting to waiver of immunity. Like the removal in *Lapides*, that initial voluntary invocation of the administrative remedies was found to constitute waiver of immunity. Beyond that initial invocation, *Ramsey* is similar to *Vas-Cath* in that the process invoked by the State was one continuous proceeding that included the jurisdiction of a federal agency followed by federal judicial review. *See id.* at 16 ("The state voluntarily put itself in the position of being a party in a federal administrative forum whose actions would be reviewed in federal court. The state's actions expressed a clear choice to submit its rights for adjudication in the federal courts."); *Vas-Cath*, 473 F.3d at 1383-84 ("The University's recourse to the PTO tribunal for adjudication of its claim . . . negates the assertion of immunity to bar appeal of that adjudication."). Accordingly, like *Lapides, Gunter*, and *Vas-Cath, Ramsey* only involves the application of a State's waiver of immunity in the same continuous proceeding, and does not support BPMC"s arguments in the case at bar.

*BPMC* at 1338 (emphasis in original).The specific quotations relied upon by Plaintiffs further undermine their argument since the quotations all address a single action. For example, Plaintiffs quote *Meyers* as follows: "The Court in *Lapides* observed generally that it is anomalous or inconsistent for a state to both invoke federal jurisdiction and claim immunity from federal suit in the same case." (Pl's Memorandum p. 7). This very statement impeaches Plaintiffs' argument because the inconsistency to which the court is referring results from making conflicting claims "in the same case." Unlike in *Meyers*, the Cherokee Nation is

- 11 -

claiming immunity in one federal court case while waiving immunity in an entirely separate action pending in a different federal court. Likewise, Plaintiffs' reliance on *Vas-Cath* is misplaced. Plaintiffs quote *Vas-Cath* as follows: " . . . And when a state voluntarily invokes federal jurisdiction, it is deemed to have waived its objection not only to the cause of action but also to any relevant defenses and counterclaims." (Pl's Memorandum p. 5). Again, this simply is not the procedural situation at hand here.

Additionally, the analogous procedural postures of *BPMC* and *Tegic* provide further support for denial of leave to amend. As here, *BPMC* involved two separate lawsuits pending before two different federal district courts. The *BPMC* Court explicitly rejected the argument that a waiver of sovereign immunity in one lawsuit "extends to or carries over to the instant lawsuit because this action involves the same subject matter and the same parties." Likewise, in *Tegic Communications v. University of Texas System*, 458 F.3d 1335 (Fed. Cir. 2006), the court held that "a State University's participation in one lawsuit did not amount to a waiver of immunity in a separate lawsuit, even one involving the same patent."

Plaintiffs' attempt to distinguish *Tegic* based on "the timing of the Cherokee Nation's action" (Pl's Memorandum at 6, fn. 2) misses the mark. It is irrelevant that the Cherokee Nation was "well aware" of the Vann case when it brought the Northern District of Oklahoma action. *Tegic* did not turn on the converse of this proposition. If the *Tegic* case itself were not clear enough on this point, the *BPMC* court explicitly noted that "our holding in *Tegic* . . . demonstrates that a State's waiver of immunity as to the subject matter of a lawsuit does not, by itself, constitute a waiver of immunity in any future lawsuit involving that subject matter." *BPMC*, 505 F.3d at 1339.

### 2. None of Plaintiffs' Decisions Establish Waiver of Forum Immunity by Litigation Conduct.

Plaintiffs also argue that the principles behind the rule governing waiver by affirmative litigation conduct -- avoiding unfairness and inconsistency -- should apply here to prevent the Cherokee Nation from asserting sovereign immunity in this case. (Pl's Memorandum, p. 6). Since *BPMC* and *Tegic* defeat Plaintiffs' first argument that the Cherokee Nation has waived its right to assert immunity "with regard to the subject matter of this case," Plaintiffs are forced to support their claim of waiver not with direct authority, but, rather, by invoking the general principle behind the doctrine of litigation conduct -- the need to avoid "inconsistency" and "unfairness" and to prevent a sovereign from using its immunity to achieve a litigation advantage. Their own authority forces Plaintiffs to miss the mark.

The *BPMC* court addressed the specific context of waiver by litigation conduct, noting first that while waiver in the litigation context focuses on the litigation act, the waiver must nonetheless be clear. Accordingly, the court held that a "waiver of immunity as to the subject matter of a lawsuit does not, by itself, constitute a waiver of immunity in any future lawsuit involving that subject matter". *Id*. at 1339. But, like Plaintiffs in this case, the *BPMC* plaintiffs argued that the principle behind waiver by litigation conduct barred the State from claiming immunity in that instance. This argument was rejected by the *BPMC* court:

> In addition, we also reject BPMC's argument that the need to prevent unfairness and inconsistency requires a finding that DHS cannot assert immunity in the present lawsuit. BPMC misses one critical point that runs through almost all of the case law on which it relies: the waivers found in the cases cited by BPMC were based on actions by a State in the *same* case, not in cases that are either separated by a dismissal or cases that are entirely different actions. *Lapides*, itself of course, did not involve the effect of waiver of immunity in one case on a State's ability to later assert immunity in a *separate* case; it involved waiver based on actions that occurred in the same action. This is a common thread in authority on which BPMC relies.

*Id*. at 1336 (emphasis in original).

By arguing that the Cherokee Nation should be deemed to have waived its immunity in this case in order to avoid unfairness and prevent it from using its immunity for tactical advantage, Plaintiffs again attempt to sidestep the fact that the opinions on which they rely make clear that any potential inconsistency or unfairness is a product of a sovereign taking different positions in the *same case* in order to achieve advantage in *that case*. Plaintiffs make this argument despite the fact that, in rejecting the same argument, the *BPMC* court clearly stated that relying on such cases is inappropriate when two separate actions are involved.

Ignoring for a moment the dispositive fact that two different actions are at issue here, Plaintiffs' argument that the Cherokee Nation must be prevented from using its immunity to gain a tactical advantage fails for two more fundamental reasons. First and foremost, Plaintiffs point to no such tactical advantage that would inure to the benefit of the Cherokee Nation. In *Lapides*, for example, the State recognized that a state statute had waived its sovereign immunity from state lawsuits in state court. Georgia removed the case, invoking the jurisdiction of the federal court for the sole purpose of attempting to shield itself from liability that would otherwise attach by claiming immunity before a court where its immunity had not already been waived. In *Vas-Cath*, the State initiated a Patent and Trademark Office proceeding, won a favorable ruling, and then sought to use its immunity to shield that favorable ruling from review. "It is easy to see why in those cases, the courts cautioned that the principles of federalism are not designed for tactical advantage and that to permit the state to reverse course would contravene the reasons for the doctrine of waiver by litigation conduct recognized by *Lapides*." *BPMC*, 505 F.3d. at 1340 (internal citations omitted).

Second, none of the cases Plaintiffs cite support their contention that a sovereign's waiver in one forum may be deemed a waiver with respect to those claims in another forum. Plaintiffs

cite to no such decisional law because there is none.  The law is, in fact, that a sovereign may waive its immunity in one forum without waiving its immunity in a different forum as Plaintiffs acknowledge.  *See* p.8, *supra*.

## CONCLUSION

The proposed Fifth Amended Complaint is futile given the lack of a direct right of action by Plaintiffs against the Cherokee Defendants, and the absence of applicable authority for rejoining the previously dismissed Cherokee Nation.  Accordingly, this Court should deny Plaintiffs' motion for leave to file a Fifth Amended Complaint.

Respectfully submitted,

/s/ Graydon Dean Luthey, Jr.
Graydon Dean Luthey, Jr., OBA #5568
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, Oklahoma 74103-3708
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
dluthey@hallestill.com
*Admitted pro hac vice*

and
/s/ A. Diane Hammons
A. Diane Hammons, DC Bar OK0004
Attorney General
The Cherokee Nation
P.O. Box 948
Tahlequah OK 74465-0948
Telephone: 918-453-5282
Facsimile:  918-458-5580
Diane-Hammons@cherokee.org

and

        Raymond G. Mullady, Jr., DC Bar 471054
        Orrick, Herrington & Sutcliffe, LLP
        Columbia Center
        1152 15th Street, N.W.
        Washington, D.C. 20005-1706
        Telephone:  202-339-8400
        Facsimile:  202-339-8500
        rmullady@orrick.com

        Attorneys for Defendant Chadwick Smith

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of March, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

    Alvin Bertram Dunn    alvin.dunn@pillsburylaw.com
    Amber B Blaha    amber.blaha@usdoj.gov
    Ellen Connelly Cohen    ellen.cohen@pillsburylaw.com
    Jack McKay    jack.mckay@pillsburylaw.com
    Preston Burton    pburton@orrick.com
    Raymond Gerard Mullady , Jr    rmullady@orrick.com
    Thomas G. Allen    thomas.allen@pillsburylaw.com

Notice will be delivered by other means to::

    Jonathan Velie
    VELIE & VELIE
    210 East Main Street
    Suite 222
    Norman, OK 73069

    Lanny Jesse Davis
    ORRICK, HERRINGTON & SUTCLIFFE, LLP
    Columbia Center
    1152 15th Street, NW
    Washington, DC 20005-1706


        /s/ Graydon Dean Luthey, Jr.