UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARILYN VANN, RONALD MOON, DONALD MOON, CHARLENE WHITE, RALPH THREAT, FAITH RUSSELL, ANGELA SANDERS, SAMUEL E. FORD, and THE FREEDMEN BAND OF THE CHEROKEE NATION OF OKLAHOMA,<br><br>      Plaintiffs,<br><br>  v.<br><br>KEN SALAZAR, Secretary of the United States Department of the Interior;<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; and<br><br>CHADWICK SMITH, Individually and in His Official Capacity,<br><br>      Defendants. | Case No: 1:03cv01711 (HHK)<br>Judge: Henry H. Kennedy<br>Docket Type: Civil Rights<br>   (non-employment) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR LEAVE TO FILE FIFTH AMENDED COMPLAINT**

Let's first be frank about the state of the law: Neither Chief Smith nor the Freedmen cite a case addressing the factual situation presented here. This failure to find a case precisely on point is not surprising for the simple reason that the Cherokee Nation's actions are unprecedented, but it does not mean that no applicable law exists. To the contrary, the general judicial principle at issue here – that a sovereign waives its immunity in the federal forum by voluntarily invoking the jurisdiction of the federal courts – is neither new nor at all in doubt. The Supreme Court for more than a century "has made clear in general that 'where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions

of the Eleventh Amendment.'" *Lapides v. Bd. of Regents of the Univ. of Georgia*, 535 U.S. 613, 619 (2002) (quoting *Gunter v. Atlantic Coast Line R. Co.*, 200 U.S. 273, 284 (1906)).

Chief Smith asserts in his Opposition that the Freedmen set forth no law to support their argument that the Cherokee Nation has waived its immunity, but at the same time feels compelled to make extensive efforts to distinguish the many cases the Freedmen have cited. His efforts ultimately fail – because Chief Smith never directly addresses the core principle at stake and never explains why it should not apply in this case. Chief Smith concedes, as he must, that the Cherokee Nation now has waived its immunity on the identical facts before another federal district court. Opposition at 3-4. According to the general rule of *Lapides*, the Cherokee Nation should therefore expect to be susceptible to the consequences of its own voluntary act. Chief Smith nonetheless argues – based upon what amounts to a highly selective interpretation of a few sovereign immunity cases – that the general rule does not apply here. But his argument has no merit, for not one of the cases Chief Smith cites provides any persuasive reason why the general waiver principle articulated in *Lapides* should not apply in this case to find that the Cherokee Nation may be rejoined to this suit.

I.  **THE CHEROKEE NATION HAS WAIVED ITS SOVEREIGN IMMUNITY BY INVOKING THE JURISDICTION OF THE FEDERAL COURTS IN THIS MATTER**

Without addressing squarely the action the Cherokee Nation has taken by filing a separate lawsuit in the United States District Court for the Northern District of Oklahoma, Chief Smith argues that there is a "clear rule" that "[a] sovereign's right to control the forum in which it litigates is inherent in sovereign immunity and courts *must* uphold the exercise of that right." Opposition at 8 (emphasis added). The actual case law, however, does not draw a bright line that gives a sovereign the right to control the forum in which it litigates under all circumstances. In

2

fact, finding that the Cherokee Nation waived its right to immunity in this Court by filing the Oklahoma action in a sister U.S. District Court would be completely consistent with existing sovereign immunity doctrine and with *Lapides* in particular. While a sovereign may freely choose to invoke the jurisdiction of the federal forum, once it has done so it may not invoke its immunity to further "control" the federal courts' exercise of that jurisdiction, nor may it attempt to use its immunity to gain a litigation advantage. As such, the Cherokee Nation should be subject to the general principle of waiver by invocation because the Cherokee Nation, when it filed the Oklahoma action, made a voluntary invocation of the jurisdiction of the federal courts that was (1) clear, (2) not limited to a single venue, (3) made with the intent to achieve litigation advantage, and (4) inclusive of the same case or controversy at issue here.

### A. *Lapides* Supports a Finding of Waiver

The Supreme Court recently reiterated in *Lapides* the general judicial principle that it is "anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." 535 U.S. at 619. In doing so, the Court overturned *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459 (1945), which had created a specific exception to waiver when a state attorney general removed a case from state court to federal court without gaining from the state express authority to waive the state's sovereign immunity by removing the case. In *Lapides,* the Supreme Court reasoned that the "sounder line of authority" called for eliminating such an exception because "[i]n large part the rule governing voluntary invocations of federal jurisdiction has rested upon problems of inconsistency and fairness that a contrary rule of law would create." *Lapides*, 535 U.S. at 622-23. Instead, by overturning *Ford*,

3

the Supreme Court made clear that "the general legal principle requiring waiver ought to apply" unless there is "something special" about the specific action taken, or about the case itself, to justify a departure. *Id.* at 620.

The holding in *Lapides* is not restricted to the "facts, rules, or reasons peculiar to the *Lapides* case. Rather, throughout its opinion, the Court's reasoning, rule-making, and choice of precepts were derived from generally applicable principles serving 'the judicial need to avoid inconsistency, anomaly, and unfairness' in states' claims of immunity in all types of federal litigation." *Meyers v. Texas*, 410 F.3d 236, 244 (5th Cir. 2005) (quoting *Lapides*). Under a straightforward application of *Lapides*, the Cherokee Nation has waived its immunity in this Court by filing the Oklahoma action.

As set forth in detail below, cases following *Lapides* make clear that there is no "bright-line rule" dictating that a lawsuit by a sovereign in one federal district court can never constitute waiver of immunity to suit in a different federal district court on an identical claim. The law also makes clear that litigation conduct may effect a waiver when necessary to avoid unfairness and inconsistency, as well as to prevent a sovereign from selectively using immunity to achieve a litigation advantage. The fact that no court has yet addressed the precise matter presented here cannot spare the Cherokee Nation from a straightforward application of *Lapides*.[1]

---

[1] The fact that *Lapides* addresses state sovereign immunity and not tribal sovereign immunity makes no difference. Similar core sovereign immunity principles have frequently been found to apply to both contexts, as in *Ex Parte Young*. *See, e.g., Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008). In particular, courts have looked to Eleventh Amendment cases when assessing the doctrine of waiver by affirmative conduct by a tribe. *Osage Tribal Council v. U.S. Dep't of Labor*, 187 F.3d 1174, 1181-82 (10th Cir. 1999) ("We take our cue from the decisions addressing waiver of Eleventh Amendment state sovereign immunity. Conceding potential differences between tribal and state sovereign immunity, we note that courts have

B.  **The Cherokee Nation's Intent to Waive Immunity in the Federal Forum Was Sufficiently Clear**

The Cherokee Nation, by filing the Oklahoma action and raising one of the claims raised in this case, has demonstrated the unequivocal intent to subject itself to the jurisdiction of the federal courts. That act constitutes clear waiver "to the 'complete determination' of the litigation" by the federal courts. *Tegic Communications v. University of Texas System*, 458 F.3d 1335, 1342 (Fed. Cir. 2006) (citing *Clark v. Barnard*, 108 U.S. 436, 448 (1883)); *see also Gardner v. New Jersey*, 329 U.S. 565, 574 (1947) (state's waiver of respecting the "adjudication" of a claim was clear from the state's filing of that claim).

Chief Smith nevertheless argues that the Cherokee Nation's waiver was not sufficiently clear, relying heavily on *Biomedical Patent Management Corp. v. California Dep't. of Health Services*, 505 F.3d 1328 (Fed. Cir. 2007) ("*BPMC*"), and on *BPMC's* extensive discussion of many of the significant sovereign immunity cases, including *Lapides*. *BPMC* does merit careful consideration. However, *BPMC* does nothing to suggest that the Cherokee Nation's waiver of immunity here was less than clear. To be sure, the sovereign's waiver of immunity must be sufficiently "clear," but "[t]he relevant 'clarity' here must focus on the litigation act the State takes that creates the waiver." *Lapides*, 535 U.S. at 620. *BPMC* therefore examines the litigation conduct of the state agency at issue under the standard set forth in *Lapides*, in which

---

often used similar language in defining the requirements for waiver of these immunities."). *Lapides* likewise has been applied to Indian tribes. *New York v. Shinnecock Indian Nation*, 523 F. Supp. 2d 185, 297-98 (E.D.N.Y. 2007) ("even though *Lapides* did not involve an Indian tribe, ... the issue of Indian tribal sovereignty can be analyzed under the analogous legal framework utilized when considering issues of state immunity from suit under the Eleventh Amendment"). Chief Smith failed to explain why a tribe should be entitled to broader immunity protection than a state; indeed, Chief Smith in his Opposition cited only Eleventh Amendment cases.

the Supreme Court "explained that the rule governing waiver of immunity by litigation conduct rests on the need to avoid 'unfairness' and 'inconsistency,' as well as to prevent a State from selectively using immunity to achieve a litigation advantage." *Id.* at 1340 (citing *Lapides*, 535 U.S. at 620). Those principles support a finding in this case that the Cherokee Nation has waived its immunity.

Chief Smith's heavy reliance upon the ultimate holding in *BPMC* ignores completely the important differences between the facts in *BPMC* and those presented here. In *BPMC*, the court considered whether the state agency, by intervening in the initial law suit, had waived its immunity with respect to a related law suit filed nearly ten years later against it in another federal district. Here, however, the Cherokee Nation filed suit not years earlier and not when no related case was pending; rather, the affirmative litigation action that triggers the waiver is a brand-new case brought by the Cherokee Nation within a year of obtaining dismissal from this action (on sovereign immunity grounds) and while this action – which raises the precise claim raised in the Oklahoma action – is still pending. The *BPMC* holding is limited to its facts. Indeed, *BPMC* itself drew the distinction between its facts and those present in other cases – such as *Lapides*, *Vas-Cath*, and *Ramsey* – that set forth "considerations of 'unfairness' and 'inconsistency.'" 505 F.3d at 1339. Both *BPMC* and *Tegic* distinguish cases in which the state could "surely anticipate" the potential for additional liability based on its action. *Tegic*, 458 F.3d at 1342-43. The Cherokee Nation simply cannot now assert that it could not have foreseen the possibility that the federal courts would interpret its action as waiver in this action.

Chief Smith cites *Tegic* to support his argument that waiver could not have been clear because this action and the Oklahoma action are "entirely separate." Opposition at 12. Putting aside for the moment that this action and the Oklahoma action are in fact practically identical,

6

nothing in *Tegic* or *BPMC* precludes the possibility that waiver in one suit may constitute waiver in a separate suit – where, as here, the circumstances present the requisite clear waiver. Chief Smith nonetheless appears to contend that the court's holding in *Tegic* – that the state in that case had not waived its immunity in another, later-filed suit in another venue – means that it is *never* possible for a sovereign to waive its immunity as to a separate but intrinsically related action. But *Tegic* did not so hold, and *BPMC*, following *Tegic*, expressly held open the possibility of waiver in such circumstances: "By distinguishing *Lapides*, *Gunter*, *Vas-Cath*, and *Ramsey*, on one hand, and *City of S. Pasadena* and *Tegic*, on the other, we do not mean to draw a bright-line rule whereby a State's waiver of sovereign immunity can never extend to a re-filed *or separate* lawsuit." *BPMC* at 1339 (emphasis added); *see also* Moore's Federal Practice § 123.41(1)(f) (*BPMC* "left the door open for the possibility that a state's waiver of sovereign immunity might apply in a later suit if, under the circumstances, permitting the state to assert sovereign immunity in the later suit would be substantially unfair or inconsistent").

At least one U.S. Court of Appeals has expressly noted that *Lapides* raises the possibility that a sovereign may, by invoking federal jurisdiction in one suit, waive its immunity as to other suits: "There is an interesting argument to be made that invocations of federal jurisdiction in related suits waive sovereign immunity as to other suits. This argument emerges from language in *Lapides v. Board of Regents of the University System of Georgia*, in which the Supreme Court distinguished litigation-conduct waivers from other kinds of (repudiated) constructive waivers." *Fairley v. Stalder*, 294 Fed. Appx. 805, 809-10 (5th Cir. 2008). The possibility of waiver under *Lapides* should therefore have been clear to the Cherokee Nation, even if the Cherokee Nation did not have any explicit intention to waive its sovereignty in this particular suit. A finding of waiver in the litigation context "rests upon the … presumed recognition of the judicial need to

7

avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Lapides*, 535 U.S. at 620.  Here, the Cherokee Nation took its action – filing suit for declaratory judgment on the same case or controversy while this case is pending before this Court – deliberately and with foreknowledge of the existing suit, thus demonstrating the requisite clear intent necessary for waiver.

        C.        **The Cherokee Nation's Waiver Is Not Restricted to a Single Federal Venue**

Chief Smith argues that although the Cherokee Nation has voluntarily invoked the jurisdiction of the federal courts, its waiver of sovereign immunity must be restricted to a single federal venue – the Oklahoma court.  According to Chief Smith, there is a "clear rule" that "[a] sovereign's right to control the forum in which it litigates is inherent in sovereign immunity and courts must uphold the exercise of that right."  Opposition at 8.  Chief Smith also makes much of the acknowledgement by the Freedmen of the general proposition that a sovereign may waive its immunity in one federal forum without necessarily waiving it in another.  But Chief Smith fails to acknowledge, much less address, the fact that a sovereign's right to invoke its immunity is not absolute and that the unique circumstances of this case – particularly in light of *Lapides* – do not favor Chief Smith's assertion that the Cherokee Nation has the right to choose its venue.

Chief Smith here relies primarily on *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), which states "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."  465 U.S. at 99; Opposition at 8.  But *Pennhurst* itself does not reach this case – for it refers only to waiver in the *federal court* forum (as opposed to the *state court* forum); it says nothing at all about *venue*.  *Pennhurst* holds that a State does not, merely by waiving its immunity in its own courts, also waive its immunity in the

8

federal forum. 465 U.S. at 99 n.9 ("the Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity in the federal courts").

Chief Smith points to *Tegic* to argue that *Pennhurst* set forth an absolute rule. Opposition at 8. Yet while *Tegic* does apply *Pennhurst* to reach the question of venue, it does so in a context not applicable here. To conclude that these two cases establish a "clear rule" that a sovereign must have *exclusive* control over the specific federal venue even where, as here, it has invoked federal jurisdiction as a plaintiff, requires an extraordinarily broad reading – one that is not supported neither by *Tegic* nor by other federal precedent.

First, while the express language in *Pennhurst* refers to the rights of a sovereign to control "not merely *whether* it may be sued, but *where* it may be sued," it does not address cases in which the sovereign has brought suit *as a plaintiff*. As a general matter, suits filed by a sovereign are on "a different footing" from suits filed against a sovereign because "history gives little indication that sovereign immunity was ever intended to protect plaintiff states. Rather, it plainly understands sovereign immunity as protection from being sued." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. N.Y. 2007) (quoting and adopting the holding in *California v. Dynegy*, 375 F.3d 831, 847 (9th Cir. 2003). As a result, states that have filed suit in the federal forum generally may not invoke sovereign immunity to assert exclusive control over the particular federal venue. *See, e.g.*, *The Regents of the Univ. of California v. Eli Lilly and Co.*, 119 F.3d 1559, 1564-65 (Fed. Cir. 1997) (finding that the question of whether waiver of immunity extended to another federal venue did not even arise where the state had brought suit as a plaintiff, because the state was not entitled to claim immunity).

Second, although *Tegic* bears some superficial similarities to the facts in this case, it is the differences between the two cases that make clear that the exception *Tegic* applied to the general waiver principle should not extend here. *Tegic* does present a case in which a state sovereign filed suit in federal court as a plaintiff, and in which the state had been sued on the same facts in another federal venue. But that is where the similarity ends. In fact, comparing the facts in *Tegic* with this case, the timing of the Cherokee Nation's actions more closely resembles the actions of the unsuccessful *plaintiff* in *Tegic*, rather than of the state claiming immunity. In *Tegic,* the state filed the initial suit in Texas federal court for patent infringement against Tegic's customers and licensees but chose not to sue Tegic itself. Rather than intervene in that suit to protect its interests, Tegic instead responded by filing a declaratory action in Washington seeking judgment that the patent in question was invalid and unenforceable. Tegic argued that the state could not claim immunity from its suit in Washington, based on its wavier in the earlier-filed suit in Texas. But the court held that the state had not waived its immunity in the second forum because it had "not used its Eleventh Amendment immunity adversely against Tegic, but instead committed itself not to sue Tegic." 458 F.3d at 1344.

*Tegic* therefore stands only for the principle that a state does not, by filing suit in a federal forum, automatically waive immunity from all *later-filed suits* on the same facts. 458 F.3d at 1342 ("Tegic brought a new action, by a new party, in a new forum. We agree with the [state] that its filing of the Texas action did not establish waiver as to this separate action."). But this ruling does not settle the matter now before this Court. Here, it is the Cherokee Nation that has brought a rival suit seeking a declaratory judgment in another forum, against essentially the

10

same parties,[2] and on the underlying facts of an existing case *while the case in the initial forum is still pending*. The Cherokee Nation can therefore hardly assert that it is in the same position as the state in *Tegic*.

### D. The Cherokee Nation Has Attempted to Use Its Sovereign Immunity to Achieve Litigation Advantage

It should not be lost upon this Court that here, unlike in any of the cases Chief Smith cites, the Cherokee Nation filed the Oklahoma action only after a protracted intervention in this case, first attempting to have the suit dismissed, and then seeking to re-assert its sovereign immunity. By filing the Oklahoma action at this late date, it seems clear that the Cherokee Nation's primary intent is to avoid an unfavorable outcome against Chief Smith in this action, rather than to assert any genuine interest it may purport to have to provide a proper federal forum to hear the issues in this case. Under these circumstances, the Cherokee Nation has blatantly abused its immunity privilege in an effort to achieve a litigation advantage and, under *Lapides,* has waived its immunity.

The underlying principles set forth in *Lapides* to justify general application of the rule of waiver by invocation – "the judicial need to avoid inconsistency, anomaly, and unfairness," *Lapides*, 535 U.S. at 620 – also support a finding of waiver here. As set forth above, the lower courts have not limited their application of *Lapides* to the "facts, rules, or reasons peculiar to the

---

[2] In the Oklahoma action, the Cherokee Nation sued not the Freedmen plaintiffs in this action but – as part of its effort to gain a litigation advantage – five separate Freedmen. For the purpose of assessing waiver, that is a distinction without a difference. The issues raised in this action and in the Oklahoma action are identical whether the parties are the Freedmen who are plaintiffs here or the Freedmen who are defendants in the Oklahoma action. Moreover, the five Freedmen defendants in the Oklahoma action are members of the Freedmen Band of the Cherokee Nation of Oklahoma, which is a plaintiff in this action.

*Lapides* case," *Meyers*, 410 F.3d at 244, but instead have looked more generally to the "reasons for the doctrine of waiver by litigation conduct recognized by *Lapides* and *Lapides's* core concern that a state cannot selectively invoke its Eleventh Amendment immunity to gain litigation advantage." *New Hampshire v. Ramsey*, 366 F.3d 1, 16-17 (1st Cir. 2004); *see also Vas-Cath v. Curators of the Univ. of Missouri*, 473 F.3d 1376 (Fed. Cir. 2007); *Embury v. Regents of the Univ. of California*, 361 F.3d 562 (9th Cir. 2004). Chief Smith attacks these cases on the grounds that they do not present "the procedural situation at hand here." Opposition at 12. However, Chief Smith yet again ignores the underlying principles at work in all of them and therefore fails to address why those principles should not apply here.

There can be no question that the Cherokee Nation filed the Oklahoma action to seek a litigation advantage – both for itself and for Chief Smith. (Both parties are represented by the same counsel.) Chief Smith nonetheless attempts to convince this Court that the Freedmen "point to no such tactical advantage that would inure to the benefit of the Cherokee Nation." Opposition at 12. However, as the Freedmen have explained, the Cherokee Nation's conduct strongly supports the conclusion that the Cherokee Nation – having recognized the risk that this suit could proceed to judgment in this Court against Chief Smith – filed the Oklahoma action in an effort to reduce that risk and as a blatant attempt to forum shop. That fact was made even more clear immediately after the Cherokee Nation filed the Oklahoma action, when Chief Smith informed this Court that the Oklahoma action is a "procedurally appropriate avenue . . . for Plaintiffs to judicially resolve their asserted and disputed claim that the Treaty of 1866 between the Cherokee Nation and the United States currently entitles them to rights of Cherokee Nation citizens." Dkt. 120 (Supp. Def. Mem. at 2).

It is telling that the Cherokee Nation does not set forth a non-tactical justification for the Oklahoma action. There is none. The Cherokee Nation previously has argued that the Freedmen's claims cannot be heard in any federal court. It is only now that the Cherokee Nation fears this Court might hear those claims that the Cherokee Nation seeks to have the court of its choosing – the U.S. District Court for the Northern District of Oklahoma – hear those claims. Such overt gamesmanship is simply unacceptable: "Allowing a State to waive immunity to remove a case to federal court, then 'unwaive' it to assert that the court could not act would create a new definition of chutzpah. We decline to give the State such unlimited leeway[.]" *Embury*, 361 F.3d at 566.

### E. The Oklahoma Action Is Not an Entirely Separate Action

Chief Smith's entire argument ultimately hinges upon his contention that the Cherokee Nation's suit in the Northern District of Oklahoma is an "entirely separate suit" – an argument that not only strains credulity but also has been contradicted by his own earlier submission to this Court. Chief Smith asserts that "[a]t the time the Northern District of Oklahoma Action was filed, the Cherokee Nation was not a party in any state or federal court in any litigation involving the 1866 Treaty or statutes affecting it." Opposition at 4. That statement, although literally true, does not tell the whole story because it ignores the fact that Chief Smith is a party to this action, which is ongoing and which raises the precise claim the Cherokee Nation brings in the Oklahoma action.

## II. THE MOTION TO AMEND IS NEITHER FUTILE NOR A CONCESSION THAT THE CHEROKEE NATION IS A NECESSARY PARTY TO THIS SUIT

Chief Smith argues that the motion to amend should be denied on the ground that it would be futile. This argument merely reiterates the argument Chief Smith makes in his pending

13

motion to dismiss – specifically, that the Freedmen have no private right of action under the Treaty of 1866 or the Thirteenth Amendment. Opposition at 4-7. The Freedmen have previously responded to that argument in their Opposition to that motion, s*ee* Dkt. 123 at 26-33, and they refer to and reincorporate their response here. The Freedmen note, however, that the Cherokee Nation, after arguing vigorously to this Court that the Freedmen have no private right of action and that their claims cannot be heard by any federal court, has all of a sudden now abandoned that argument and asked a federal court – albeit the court of the Cherokee Nation's choosing – to rule on the merits of the core claim raised in this action, which has been pending before this Court for six years. The requested amendment is therefore not futile and should be granted.

Chief Smith also argues that the motion to amend "implicitly concedes" that this action cannot move forward without the Cherokee Nation. Opposition at 7. Yet this argument erroneously conflates Rule 19(a), concerning parties to be joined if feasible, with Rule 19(b), which is not at issue in this motion to amend. The Freedmen have not argued that the Cherokee Nation is a necessary party to this lawsuit. However, because the Cherokee Nation has waived its sovereign immunity, joinder is now feasible under Rule 19(a), and therefore the Cherokee Nation should be joined under the prior ruling of this Court. *Vann v. Kempthorne*, 467 F. Supp. 2d 56, 66 (D. D.C.) ("[T]he Cherokee Nation is a necessary party that must be joined if feasible.") (citing Rule 19(a)). The question raised by Defendants' motions to dismiss – whether the suit may "in equity and good conscience" move forward without the Cherokee Nation under Rule 19(b) – would become moot if the Cherokee Nation can be joined, but the substance of that argument – that the suit may proceed without the Cherokee Nation – is not otherwise affected in any way.

## CONCLUSION

Although the facts underlying this case are unique, the applicable judicial principles are well-established. This Court should apply those principles and grant the motion to amend.

Dated: April 15, 2009                     Respectfully submitted,

/s/
Jack McKay (D.C. Bar No. 159335)
Alvin Dunn (D.C. Bar No. 423229)
Thomas G. Allen (D.C. Bar No. 484425)
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Phone: (202) 663-8000
Facsimile: (202) 663-8007

Jonathan Velie
VELIE LAW FIRM
401 W. Main St., Ste. 310
Norman, Oklahoma 73069
Phone: (405) 310-4333
Facsimile: (405) 310-4334

Attorneys for Plaintiffs Marilyn Vann, *et al.*