UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARILYN VANN, et al.,<br><br>          Plaintiffs,<br><br>          v.<br><br>KEN SALAZAR, Secretary of the United States Department of the Interior, et al.,<br><br>          Defendants. | Civil Action 03-1711 (HHK) |

MEMORANDUM OPINION

Marilyn Vann, Ronald Moon, Donald Moon, Charlene White, Ralph Threat, Faith Russell, Angela Sanders, Samuel E. Ford, and the Freedmen Band of the Cherokee Nation of Oklahoma bring this action against the United States Department of the Interior ("Interior"), its Secretary (collectively, "Federal Defendants"), and S. Joe Crittenden in his official capacity as the Acting Principal Chief of the Cherokee Nation of Oklahoma ("Chief Crittenden"),[1] seeking declaratory and injunctive relief. Plaintiffs are direct descendants of former slaves of the Cherokees, or free Blacks who intermarried with Cherokees, who were made citizens of the Cherokee Nation in the nineteenth century and are known as Cherokee Freedmen (the "Freedmen"). The Freedmen contend that the Principal Chief of the Cherokee Nation, with the approval of the Secretary, has disenfranchised the Freedmen in violation of the Thirteenth

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Chief Crittenden is substituted for defendant Chadwick Smith. Defendant Smith's term as Principal Chief ended on August 14, 2011, and Defendant Crittenden assumed the position of Acting Principal Chief on September 6, 2011. The Freedmen have dismissed without prejudice their claims against Chadwick Smith in his personal capacity. [Dkt. # 147]

Amendment of the United States Constitution and the Treaty of 1866, and that the Federal Defendants have also violated those laws and others by failing to protect the Freedmen's citizenship and voting rights.

Before the Court are the motions to dismiss of the Federal Defendants [Dkt. # 118] and Crittenden [Dkt. # 119], the Freedmen's motion for leave to file a fifth amended complaint [Dkt. # 127], and the Freedmen's motion to consolidate the above-captioned case with *Cherokee Nation v. Nash*, Civil Action No. 10-1169 [Dkt #138].  Upon consideration of the motions, the oppositions thereto, and the entire record of this case, the Court concludes that Crittenden's motion to dismiss should be granted, the Freedmen's motion for leave to file a fifth amended complaint should be denied, and both the Federal Defendants' motion to dismiss and the Freedmen's motion to consolidate should be denied as moot.

## I.  BACKGROUND

**1.     Procedural History**

The detailed facts of this case are set out in a previous opinion of this Court, *Vann v. Kempthorne*, 467 F. Supp. 2d 56 (D.D.C. 2006) ("*Vann I*"), and an opinion of the United States Court of Appeals for the District of Columbia Circuit, *Vann v. Kempthorne*, 534 F.3d 741 (D.C. Cir. 2008) ("*Vann II*").  In *Vann I*, this Court addressed a motion to dismiss by the Cherokee Nation, which was permitted to intervene for the sole purpose of challenging the Court's jurisdiction, as well as the Freedmen's motion to file a second amended complaint to add the Cherokee Nation and certain of its officials as defendants.  The Court held, among other things, that sovereign immunity did not bar suit against the Cherokee Nation and the tribal officers.

*Vann I*, 467 F. Supp. 2d at 70, 74.  The Cherokee Nation appealed the denial of its motion to dismiss on sovereign immunity grounds.

In *Vann II*, the D.C. Circuit held that "nothing in the Thirteenth Amendment or the 1866 Treaty amounts to an express and unequivocal abrogation of tribal sovereign immunity, [and so] the Cherokee Nation cannot be joined in the Freedmen's federal court suit without the tribe's consent." 534 F.3d at 749.  The Circuit further held that under *Ex parte Young*, 209 U.S. 123 (1908), "tribal sovereign immunity does not bar the suit against tribal officers." *Vann II*, 534 F.3d at 750.  The Circuit remanded the action to this Court to "determine whether 'in equity and good conscience' the suit can proceed with the Cherokee Nation's officers but without the Cherokee Nation itself." *Id.* at 756 (quoting FED. R. CIV. P. 19(b)).

Following the D.C. Circuit's opinion, the Freedmen filed a fourth amended complaint that raises six claims.  The Freedmen allege that the Federal Defendants and Chief Crittenden have violated several constitutional and statutory provisions, including the 1970 Principal Chiefs Act, the Cherokee Constitution, the Treaty of 1866, the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1301, and the Thirteenth and Fifteenth Amendments of the United States Constitution.  They also seek judicial review of the Federal Defendants' alleged actions and inactions under the Administrative Procedure Act and assert that the Federal Defendants' conduct has denied the Freedmen equal protection under the Fifth Amendment.

The Cherokee Nation then filed suit in the United States District Court for the Northern District of Oklahoma against the Federal Defendants and five Freedmen[2] seeking a declaratory

---

[2] These Freedmen defendants are different individuals than the Freedmen who are plaintiffs in this case.

judgment "that the Five Tribes Act and federal statutes modified the Treaty of 1866 thereby resulting in non-Indian Freedmen descendants, including the individual defendants, no longer, as a matter of federal law, having rights to citizenship of the Cherokee Nation and benefits derived from such citizenship." *Cherokee Nation v. Nash*, Civil Action No. 10-1169, Compl. [Dkt. # 2] ¶ 18.[3]  In light of the Nation's filing of its suit in Oklahoma, the Freedmen have moved for leave to file a fifth amended complaint [Dkt. #127] in this case.  The proposed fifth amended complaint would add the Cherokee Nation as a defendant and the five Freedman whom the Cherokee Nation sued in the Northern District of Oklahoma as plaintiffs.  The Freedmen also move to consolidate the above-captioned case with *Nash* [Dkt. # 138].

## II.  ANALYSIS

**A.    Crittenden's Motion To Dismiss The Fourth Amended Complaint Under Federal Rule of Civil Procedure 19(b)**

Crittenden moves to dismiss the Freedmen's claim under Federal Rule of Civil Procedure 19(b), arguing that the case cannot proceed in the absence of the Cherokee Nation.  The Court "must determine whether, in equity and good conscience, the action should proceed among the existing parties [in the absence of the Cherokee Nation] or should be dismissed."  FED. R. CIV. P. 19(b).  The Supreme Court has explained that Rule 19(b)'s "general direction," guided by four non-exclusive factors "indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 862–863 (2008) (quoting *Provident*

---

[3]  United States District Judge Terence Kern transferred *Cherokee Nation v. Nash* to this Court, finding that under the "first-to-file rule," this Court should determine whether the case should be heard by this Court or in the Northern District of Oklahoma.  Civil Action No. 10-1169, [Dkt # 48].

*Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968)). *Id.* at 863. The decision of whether to proceed without a required party "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." The D.C. Circuit "has observed that there is very little room for balancing of other factors set out in Rule 19(b) where a necessary party under Rule 19(a) is immune from suit because immunity may be viewed as one of those interests compelling by themselves." *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1496 (D.C. Cir. 1995) (internal quotation marks omitted). As a result, a court's inquiry under Rule 19(b) is "more circumscribed" when determining whether a suit can proceed in equity and good conscience without a party who is absent for reasons of sovereign immunity, as here. *Id.* at 1497. To this inquiry the Court now turns.

### 1. Prejudice

First, the Court considers "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." FED. R. CIV. P. 19(b)(1). As this Court previously stated in holding that the Nation was a necessary party under Federal Rule of Civil Procedure 19(a), "[t]he Nation has an interest in administering its sovereign electoral and constitutional affairs" and "the sovereign interests of a tribe clearly are affected when the validity of a tribe's elections are questioned."[4] *Vann I*, 467 F. Supp. 2d at 66; *see also St. Pierre v. Norton,* 498 F. Supp. 2d 214, 220–21 (D.D.C. 2007) (finding that a judgment for plaintiffs would

---

[4] The D.C. Circuit has held that "[t]he inquiry as to prejudice under Rule 19(b) is the same as the inquiry under [former] Rule 19(a)(2)(i) [now Rule 19(a)(2)(B)(i)] regarding whether continuing the action will impair the absent party's ability to protect its interest." *Kickapoo Tribe*, 43 F.3d at 1497 n.9.

be prejudicial to the absent tribe because it "would essentially reverse current tribal law regarding membership determinations," "could drastically alter the current makeup of the Tribe," and "would also totally undermine the Tribe's authority to make independent membership determinations without federal interference"). Moreover, one of the issues in this suit is the Freedmen's rights under the Treaty of 1866 between the United States and the Cherokee Nation. For the Court to decide the import of the Treaty absent the Nation, one of the Treaty's signatories, would surely prejudice the Nation's interest.

The Court finds no merit in the Freedmen's argument that the Cherokee Nation has "no legally-protected interest" at issue here because "[p]ursuant to the Treaty of 1866 and the Thirteenth Amendment, the Cherokee Nation has no authority to treat its Freedmen citizens as anything less than full equals."[5] Freedmen's Opp'n to Crittenden's Mot. Dismiss [Dkt. #123] at 14. By raising this argument to eviscerate the Nation's claim of prejudice, the Freedmen are asking the Court to reach the merits of their claims against the Nation. This the Court cannot do.

---

[5] In support of this contention, the Freedmen cite the D.C. Circuit's statement that "[t]he tribe does not just lack a 'special sovereignty interest' in discriminatory elections—it lacks *any* sovereign interest in such behavior." *Vann II*, 534 F.3d at 755–56 (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997)). The D.C. Circuit made this statement in the limited context of addressing the Nation's argument that the Freedmen could not pursue their claims under *Ex parte Young* because the Nation had "special sovereignty interests" like the tribal property rights specifically recognized in *Coeur d'Alene*. Refusing to extend the holding of *Coeur d'Alene* "beyond its 'particular and special circumstances'" *Vann II*, 534 F.3d at 756 (quoting *Coeur d'Alene*, 521 U.S. at 287), to include "the Cherokee Nation's relatively newfangled interest in controlling its tribal elections," the D.C. Circuit opted to "leave it for the Supreme Court to decide whether to add additional sovereign interests to the core concerns discussed in *Coeur d'Alene*." *Id.* There can be no doubt that the D.C. Circuit upheld the Cherokee Nation's sovereign immunity in this case, as it found that the Nation's immunity was "intact" and that it could not "be joined in the Freedmen's federal court suit without the tribe's consent." *Id.* at 749.

Indeed, the Tenth Circuit has squarely rejected a similar argument that "an illegitimate interest cannot be legally prejudiced under the first Rule 19(b) factor." *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1291 (10th Cir. 2003). The court found that "Plaintiffs' narrow interpretation of the term 'legally protected interest' inappropriately presupposes Plaintiffs' success on the merits" and that "[s]uch an approach is untenable because it would render the Rule 19 analysis an adjudication on the merits." *Id.* (quoting *Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999); *see also id.* (explaining that "the prejudice inquiry under Rule 19(b) is essentially the same as the inquiry under [superceded] Rule 19(a)(2)(i)," now Rule 19(a)(1)(B), which concerns a party's "*claimed* interest"); *Republic of Philippines*, 553 U.S. at 864 (holding that once the Court of Appeals recognized that the claims of the absent parties were not frivolous, as part of the Rule 19(b) inquiry "it was error for the Court of Appeals to address them on their merits when the required entities had been granted sovereign immunity" and explaining that "[t]he court's consideration of the merits was itself an infringement on foreign sovereign immunity").[6]

The Court must "accord proper weight to the compelling claim of sovereign immunity" and finds that the Nation's interests would be prejudiced if the case were to proceed in its absence. *Republic of Philippines*, 553 U.S. at 869; *see also Citizen Potawatomi Nation v.*

---

[6] The Court also rejects the Freedmen's assertion that if the suit must be dismissed absent the Cherokee Nation, then *Ex parte Young* suits against tribal officers would never be available. As courts consistently recognize, the Rule 19(b) analysis is highly case specific and "calls for a pragmatic decision based on practical considerations in the context of particular litigation." *Kickapoo Tribe*, 43 F.3d at 1495. Whether a particular *Ex parte Young* claim should proceed absent the sovereign will depend on the claims raised and relief sought in the particular case, among other considerations weighing on the factors enumerated in Rule 19(b). Although it might be appropriate for some *Ex parte Young* suits to proceed in the absence of the sovereign, this is not such a suit.

7

*Norton*, 248 F.3d 993, 1001 (10th Cir. 2001) (recognizing the "strong policy favoring dismissal when a court cannot join a tribe because of sovereign immunity") (quoting *Davis*, 192 F.3d at 960) (internal quotation marks omitted). This factor weighs heavily towards dismissal. *See Republic of Philippines*, 553 U.S. at 866–67 (finding that cases "involving the intersection of joinder and the governmental immunity of the United States . . . . instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign").

**2.     The Extent To Which Prejudice Can Be Lessened Or Avoided**

Next, the Court considers "the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures." FED. R. CIV. P. 19(b)(2). The Freedmen do not offer any suggestion as to how the Court could shape the relief they seek to lessen or avoid prejudice to the Nation, and rely on the argument that the Nation's interests can be adequately represented by the Chief and the Federal Defendants. The Court disagrees.

It cannot be said that Chief Crittenden's interests are identical to those of the Cherokee Nation as a whole. Moreover, the Federal Defendants cannot represent the Nation's interest in a suit where it has not only different but conflicting interests. *Wichita & Affiliated Tribes v. Hodel,* 788 F.2d 765, 775 (D.C. Cir. 1986) (stating that "when 'there is a conflict between the interests of the United States and the interests of Indians, representation of the Indians by the United States is not adequate'") (quoting *Manygoats v. Kleppe*, 558 F.2d 556, 558 (10th Cir. 1977)). Because the Freedmen ask the Court to determine whether the Cherokee Nation must grant them citizenship rights, the Court finds no means available to lessen or avoid the prejudice to the

Cherokee Nation. *See St. Pierre v. Norton,* 498 F. Supp. 2d at 221 (finding it "difficult to imagine any way in which the Court could shape relief so as not to prejudice the Tribe" when "[t]he ruling Plaintiffs request goes straight to the heart of the Tribe's internal governance"); *Davis v. United States*, 199 F. Supp. 2d 1164, 1177 (W.D. Okla. 2002) ("No matter how the remedy is shaped, essentially the Court will be modifying the Tribe's policies and ordinances. Further, the Court finds there are no protective provisions which could be included in the judgment which would prevent trampling on the Seminole Nation's sovereign right to make its own laws and be ruled by them."). In sum, this factor favors dismissal.[7]

### 3.   Adequacy of a Potential Judgment

The Court next addresses "whether a judgment rendered in the person's absence would be adequate." FED. R. CIV. P. 19(b)(3). In this context, "adequacy refers to the public stake in settling disputes by wholes, whenever possible," which reflects the "social interest in the efficient administration of justice and the avoidance of multiple litigation." *Republic of Philippines*, 553 U.S. at 870 (internal quotation marks omitted). The Court finds that any relief obtained by the Freedmen in this action would not be adequate for the purposes of Rule 19(b) because only the Chief—not the legislative or judicial branches of the Cherokee government, nor the Nation as a whole—would be bound by the judgment. As a result, the parties are likely to be subject to

---

[7] The D.C. Circuit has stated that a court can dismiss a suit after finding that the absent party would be prejudiced under Rule 19(b)(1) and that there exists no way to lessen the prejudice under Rule 19(b)(2). *Kickapoo*, 43 F.3d at 1498 ("Because the district court concluded that [the State] would be prejudiced by a judgment rendered in its absence, and that, in view of the relief sought by the Tribe, there is no way the court can avoid the prejudice, . . . the district court had grounds to dismiss the complaint for failing to join an indispensable party without consideration of any additional factors.") (internal citation and quotation marks omitted). Nevertheless, the Court will consider the final two factors.

additional lawsuits, which will bring the potential for inconsistent judgments. *See, e.g.*, *St. Pierre v. Norton*, 498 F. Supp. 2d at 221 ("Even if the Court were to grant Plaintiffs' requested relief, the Tribe itself, as a non-party to this lawsuit, would not be bound by the Court's Order. Thus, the Tribe would likely file its own suit to enforce its right to determine membership issues, perhaps in a different jurisdiction. Conflicting rulings and resulting obligations could well result. The Court's judgment, therefore, would be adequate only to the extent that the Tribe does not challenge it."). The Court finds that this factor also weighs in favor of dismissal.

### 4. Adequacy of an Alternative Remedy

The final factor in the analysis is "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder" FED. R. CIV. P. 19(b)(4). "[W]hile the absence of an alternative forum is properly weighed heavily against dismissal . . . absence of an alternative remedy alone does not dictate retention of jurisdiction under Rule 19," *Kickapoo Tribe*, 43 F.3d at 1499,[8] when sovereign immunity counsels against proceeding.

Nevertheless, this case presents unique circumstances because *Cherokee Nation v. Nash* offers the Freedmen an alternative forum for the legal issues underlying this case to be addressed.

---

[8] *See also Republic of Philippines*, 553 U.S. at 872 ("Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. But that result is contemplated under the doctrine of foreign sovereign immunity."); *Davis ex rel. Davis,* 343 F.3d at 1293–94 (10th Cir. 2003) (finding that "the plaintiff's inability to obtain relief in an alternative forum is not as weighty a factor when the source of that inability is a public policy that immunizes the absent person from suit"); *Wichita & Affiliated Tribes*, 788 F.2d at 777 ("Although we are sensitive to the problem of dismissing an action where there is no alternative forum, we think the result is less troublesome in this case than in some others. The dismissal of this suit is mandated by the policy of tribal immunity. This is not a case where some procedural defect such as venue precludes litigation of the case. Rather, the dismissal turns on the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent.") (footnote omitted).

The Court finds that *Nash* will not only offer an adequate alternative forum, but a superior one. Unlike a potential judgment in this case, which would not bind the Cherokee Nation, the Cherokee Nation is the plaintiff in *Nash* and would be bound by any judgment rendered in that suit. The Court therefore concludes that this factor supports dismissal of the above-captioned suit.

### 5.  Public Interest Exception

The Freedmen argue that dismissal can be avoided by the public interest exception to Rule 19. As the D.C. Circuit has explained, "this exception provides that when litigation seeks vindication of a public right, third persons who could be adversely affected by a decision favorable to the plaintiff are not indispensable parties." *Kickapoo Tribe*, 43 F.3d at 1500. The exception "generally applies where what is at stake are essentially issues of public concern and the nature of the case would require joinder of a large number of persons." *Id.* (internal quotation marks omitted); *see also Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1026 (9th Cir. 2002) ("To qualify for the public rights exception, the litigation must transcend the private interests of the litigants and seek to vindicate a public right.") (internal quotation marks omitted).

The Court finds that the exception does not apply to this case. First, at issue is the joinder of the Cherokee Nation, not a large number of persons. Second, the Freedmen's claims implicate their rights under the Thirteenth Amendment and the Treaty of 1866 and their relationship with the Cherokee Nation, which are not truly "public rights." *See Cherokee Nation v. Babbitt*, 117 F.3d 1489, 1497 (D.C. Cir. 1997) (refusing to apply public interest exception because "the dispute involves rights to federal benefits, or, more expansively, the relationship between two groups and their respective relationships with the federal government" and finding that "[w]hile

issues of sovereignty are fundamental in nature, as narrowly posed here between two groups, there is simply no necessity requiring invocation of an exception to Rule 19"); *Kickapoo Tribe*, 43 F.3d at 1500 (rejecting application of the public interest exception where the case did not require the joining of an "infeasibly large number of parties" nor "implicate a matter of transcending importance"); *cf. Nat'l Wildlife Fed'n v. Burford*, 676 F. Supp. 271, 276 (D.D.C. 1985)) (applying the public right exception where "[t]he public's interest in disposition of [170 million acres] of federal lands, and more concretely, in participating in the management of these lands is a matter of transcending importance . . . . [that] extends this case far beyond the boundaries of private dispute"). Finally, the public rights exception has been applied in cases where the plaintiff lacks an alternative forum for its claims. *See, e.g., Nat'l Wildlife Fed'n, 676 F. Supp.* at 276. This rationale does not apply here. As discussed above, the Freedmen have an alternative remedy, and even if they did not, courts have consistently recognized that the preservation of tribal sovereignty takes priority over providing plaintiffs with a forum for their claims. Accordingly, the Court declines to apply the public rights exception here.

Upon consideration of the circumstances of this suit, including the factors enumerated in Rule 19(b), the Court concludes that the suit cannot, in equity and good conscience, proceed without the Cherokee Nation.

**B.     The Freedmen's Motion For Leave To File A Fifth Amended Complaint**

The Freedmen also move for leave to amend their complaint to name the Cherokee Nation as a defendant once again, arguing that it waived its immunity from this action by filing suit in another federal court over the legal questions at issue here. A party seeking to amend its complaint more than once may do so only by written consent of the adverse party or by leave of

the court. FED. R. CIV. P. 15(a). Because leave is to be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), a refusal to allow amendment must be justified by a sufficiently compelling reason, such as undue delay, undue prejudice to the non-moving party, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).

The Freedmen assert that the Nation has waived its immunity as to all cases concerning the "subject matter" of *Nash*, and moreover that the Nation would enjoy an unfair tactical advantage if it was allowed to litigate those issues selectively. The Nation responds that the principles of tribal sovereign immunity allow it to bring the Oklahoma action while maintaining its immunity from this suit. The Nation is correct.

The sovereign immunity of Indian tribes is a matter of "common law" and "a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Tribal sovereign immunity "is subject to the superior and plenary control of Congress," *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978), but the Court of Appeals has ruled that, as relevant to this suit, Congress did not impair the Nation's immunity. *Vann II*, 534 F.3d at 749.

Of course, like all sovereigns, the Nation is free to assert or to waive its immunity as it sees fit, *see Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991), and "[i]t is settled law that a waiver of sovereign immunity in one forum does not effect a waiver in other forums." *West v. Gibson*, 527 U.S. 212, 226 (1999). The federal government's consent to suit against itself in federal court does not imply its consent to suit in state court,

*Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 n.6 (1944), and the converse also holds: "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). By the same token, an Indian tribe may consent to suit in tribal court or to arbitration while withholding its consent to suits brought in state or federal court. *See Lawrence v. Barona Valley Ranch Resort & Casino*, 64 Cal. Rptr. 3d 23, 27 (Cal. Ct. App. 2007) (holding that a tribe's "waiver did not constitute a consent to suit in state court on negligence claims against it, but instead specified that [tribal court] was the exclusive forum for the resolution of such claims"); *Campo Band of Mission Indians v. Superior Court*, 39 Cal. Rptr. 3d 875, 883 (Cal. Ct. App. 2006) (holding that because "[a] waiver of immunity 'is altogether voluntary' on the part of the tribe and thus the tribe 'may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted []' . . . . [the] issue must be determined in the forum that the Tribe has chosen for determination of the viability of claims against it, to wit, arbitration") (citation omitted) (quoting *Am. Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir. 1985)). This is because a sovereign's "interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

"[T]o relinquish its immunity, a tribe's waiver must be 'clear.'" *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001) (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991)); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.") (internal quotation marks omitted). Litigation

conduct may constitute a clear waiver of tribal sovereign immunity, *see* COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 7.05[1][c], at 643 (Nell Jessup Newton ed., 2005) (collecting cases in which tribes waived their immunity by participating in litigation), as it can for state sovereign immunity.  *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–76 (1999) (citing *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944) and *Gunter v. Atlantic Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906)).

      The Freedmen argue that, by filing the Oklahoma action, the Nation has clearly consented to federal jurisdiction "with regard to the subject matter of this case," Freedmen's Mot. 5th Am. Compl. at 6, and that, under *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), such a finding is necessary "to avoid inconsistency, anomaly, and unfairness." *Id.* at 620.  Their argument is unpersuasive.  In an analogous case, the Federal Circuit held that a state university that brought suit in federal court to enforce a patent did not thereby waive its sovereign immunity as to another suit concerning the validity of the same patent "brought by a different party in a different state and a different district court." *Tegic Commc'ns v. Bd. of Regents*, 458 F.3d 1335, 1343 (Fed. Cir. 2006); *but cf. Fairley v. Stalder*, 294 Fed. Appx. 805, 809–10 (5th Cir. 2008) ("There is an interesting argument to be made that invocations of federal jurisdiction in related suits waive sovereign immunity as to other suits.").  This court, like that one, can "discern no . . . clear waiver" from the filing of a separate suit on a similar subject. *Tegic*, 458 F.3d at 1343.  The plaintiffs' theory of "subject matter" waiver also fails for a more basic reason: it would require the conclusion that a tribe waives its immunity as to compulsory counterclaims—those that "arise[] out of the transaction or occurrence that is the *subject matter* of the [tribe's] claim," FED. R. CIV. P. 13(a)(1)(A) (emphasis added)—when it files suit, and the Supreme Court has held to

the contrary. *Okla. Tax Comm'n*, 498 U.S. at 509 ("[A] tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe.") (citing *United States v. U.S. Fid. & Guar. Co.*, 309 U.S. 506, 513 (1940).

The Freedmen's reliance on *Lapides* is therefore misplaced. In *Lapides*, the Supreme Court held that when a state voluntarily removed an action to federal court it could no longer assert its sovereign immunity from suit in that forum. 535 U.S. at 624. Affirming the principle that a state can waive its sovereign immunity through litigation conduct, the Court explained that that interpretation of the Eleventh Amendment "rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Id.* at 620. Even if that same structural presumption operates outside of the context of the Eleventh Amendment, it does not affect the result in this case. The Court of Appeals has held that the Nation need not subject itself to the jurisdiction of the federal courts over the claims raised here. That the Nation nonetheless chooses to do so in a case with different parties but essentially identical issues while asserting its immunity from this suit does not produce the sort of inconsistency, anomaly, or unfairness imagined in *Lapides*. The Nation is free to litigate these questions in the federal action of its choosing, or not at all.

Because an amended complaint that adds the Cherokee Nation as a party would be futile, the Court will deny the Freedmen's motion to file its proposed fifth amended complaint. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004) ("[A]

district court has discretion to deny a motion to amend on grounds of futility where the proposed pleading would not survive a motion to dismiss.").

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the suit cannot proceed without the Cherokee Nation and that the Cherokee Nation did not waive its sovereign immunity such that it can be joined as a party to this suit. Accordingly, the Court will grant Crittenden's motion to dismiss [Dkt. # 119], deny the Freedmen's motion for leave to file a fifth amended complaint [Dkt. # 127], and deny as moot the Federal Defendant's motion to dismiss [Dkt. # 118] and the Freedmen's motion to consolidate with *Cherokee Nation v. Nash* [Dkt. # 138]. An appropriate order will accompany this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge